# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUDITH HATFIELD, on Behalf of
Herself and All Others Similarly
Situated,

      *Plaintiff-Appellant,*

v.

HALIFAX PLC and HBOS PLC,
      *Defendants-Appellees.*

No. 07-55790

D.C. No.
CV-05-08790-
SGL(PLAx)

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
November 20, 2008—Pasadena, California

Filed May 8, 2009

Before: Susan P. Graber and Richard R. Clifton, Circuit
Judges, and David G. Trager,* District Judge.

Opinion by Judge Trager

*The Honorable David G. Trager, United States District Court Judge for
the Eastern District of New York, sitting by designation.

## COUNSEL

Eric Alan Isaacson, Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, California, for the plaintiff-appellant.

Philip L. Graham, Jr., Sullivan & Cromwell LLP, Los Angeles, California, for the defendants-appellees.

## OPINION

TRAGER, District Judge:

Judith Hatfield ("Hatfield") appeals the decision of the United States District Court for the Central District of California ("district court") granting a motion to dismiss in favor of Halifax PLC and HBOS PLC (the "Halifax Appellees") on statute of limitations grounds. Hatfield's allegations stem from a June 2, 1997, transaction in which Halifax Building Society ("HBS"), of which Hatfield was a member, was converted into a publicly traded company called Halifax PLC ("Halifax"). Hatfield claims that she, and similarly situated individuals, were deceived into believing that, upon completion of the transaction, they would be entitled to free shares in Halifax, which they never received. The district court found that Hatfield's claims, brought eight-and-a-half years after her causes of action arose, were barred by California's statutes of limitations, which are four years or less for each of Hatfield's claims. On appeal, Hatfield argues that: (1) this action is governed by the English six-year statute of limitations as provided by the choice of law provision in the Transfer Agreement between HBS and Halifax; and (2) the six-year limitations period was tolled by the filing of a previous class action in New Jersey state court, making this action timely. For the reasons stated below, we vacate the district court's decision concerning the untimeliness of Hatfield's action, but only with respect to Hatfield individually and members of the putative class who are California residents.

## BACKGROUND

Hatfield was a member of HBS, a United Kingdom-based building society. In January 1997, HBS sent a voting packet and a "Transfer Document" to its nine million existing members, including Hatfield, informing them that the building society was converting into a publicly traded company called Halifax. The Transfer Document provided that, if the conversion was approved, each "qualifying member" would receive free shares in Halifax. The Transfer Document also outlined the conditions for member qualification, including the requirement that a member needed to have a registered address[1] in the United Kingdom or a "permitted territory." The United States was not considered a "permitted territory."[2] Approximately 8,000 members, including Hatfield, who resided in Santa Barbara, California, had registered addresses in the United States, which disqualified them from receiving the free Halifax shares. On February 24, 1997, a majority of HBS members, including Hatfield, voted in favor of the conversion. The conversion then took place on June 2, 1997, at which point the qualified members' rights to the free shares vested. The disqualified members received no shares.

On June 2, 2003, Hatfield, along with three other former HBS members who failed to qualify for the free shares, filed

---

[1]"Registered Address" was defined in the Transfer Agreement as "the address to which the Member . . . has requested that communications from the Society be sent or (if he has not made such a request) the Member's . . . address in the Register of Members."

[2]The Transfer Document specifically stated:

A person will only be entitled to receive, or be allocated, free shares if, as at midnight on the day before vesting day, he or she has a registered address in the UK or one of the permitted territories. These are the territories where Halifax has identified a material number of customers and where the distribution of free shares would not result in a breach of local laws or require compliance with regulatory requirements which Halifax considers to be onerous.

a putative class action in New Jersey Superior Court ("New Jersey state court action") naming both Halifax and HBOS PLC, which in 2001 became the sole owner of Halifax, as defendants. The complaint primarily alleged that the plaintiffs were wrongfully deprived of their right to share in the proceeds of the sale of HBS.

On September 17, 2004, the New Jersey state court dismissed the entire action. On December 16, 2005, the New Jersey Appellate Division upheld the dismissal as to Hatfield, who resided outside of New Jersey at the time of the conversion, because the court did not have general jurisdiction over the Halifax Appellees, but it reversed the dismissal as to claims brought against Halifax[3] by the only named plaintiff who was a New Jersey resident at the time of the transaction. *Hyams v. Halifax PLC*, No. A-1078-04T3, 2005 WL 3441230, at *9 (N.J. Super. Ct. App. Div. Dec. 16, 2005).

On December 16, 2005, the same day on which the New Jersey Appellate Division issued its decision affirming Hatfield's dismissal from the New Jersey state court action, Hatfield filed substantially the same putative class action against the Halifax Appellees in the United States District Court for the Central District of California ("the district court action"). Hatfield purported to represent herself and all other similarly situated plaintiffs who were wrongfully deprived of their right to share in the proceeds of the sale of HBS. The putative class was not limited to California residents.

On October 31, 2006, the Halifax Appellees moved to dismiss Hatfield's complaint, claiming that the district court action was barred by the applicable California statutes of limi-

---

[3]Although finding that the New Jersey courts may exercise specific jurisdiction over the New Jersey plaintiff's claims against Halifax, the New Jersey Appellate Division remanded to the state court for a determination as to whether New Jersey could exercise specific jurisdiction over HBOS.

tations. In response, Hatfield argued that, because the choice of law provision in the Transfer Agreement specified that the agreement would be "governed by and construed under English law," the claims were subject to a six-year statute of limitations starting from the conversion date. Hatfield further claimed that the filing of the New Jersey state court action, which was undertaken within the six-year English limitations period, tolled the running of the statute of limitations, making the district court action timely. The Halifax Appellees argued that the choice of law provision does not apply to Hatfield's claims because: (1) she was not a party to the contract; and (2) there is no indication that the parties to the agreement intended that the choice of law provision would allow Hatfield to take advantage of the longer English statute of limitations.

On April 25, 2007, the district court dismissed the action, holding that Hatfield's claims were barred by the California statutes of limitations, which are four years or less for each of Hatfield's causes of action. *Hatfield v. Halifax PLC*, No. CV-05-8790, slip op. at 5 (C.D. Cal. Apr. 25, 2007). The district court refused to apply the six-year English statute of limitations, despite the choice of law provision, reasoning that Hatfield was not a party to the Transfer Agreement and that "absent an express statement of intent, a standard choice of law provision . . . will not be interpreted as covering a statute of limitations." The district court further held that, even if the six-year limitations period applied, Hatfield's action was late by two-and-a-half years since neither the New Jersey state court action nor the subsequent appeal tolled the limitations period.

## DISCUSSION

### (1)

### Choice of Law

[1] At the outset, the Halifax Appellees argue that Hatfield cannot enforce the choice of law provision because she was

not a party to the Transfer Agreement. Hatfield correctly replies that there is a provision in the Transfer Agreement that specifically permits members, such as herself, to enforce the contract. The Transfer Agreement provides that

> each of such Qualifying Investing Members, Qualifying Borrowing Members, *Investing Members*, Borrowing Members, the officers of the society or SCB members, as the case may be, shall be entitled severally to enforce his rights in respect of any of those rights against the Society or the Successor . . . as if he had been a party to this Agreement.

Emphasis added. Under either English[4] or California law, as an express third- party beneficiary, Hatfield has the right to enforce a contract made expressly for her benefit, here, the relevant Transfer Agreement. Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by himat any time before the parties thereto rescind it."). "The intent of the contracting parties to benefit expressly that third party must appear from the terms of the contract." *Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*, 219 Cal. Rptr. 626, 629 (Ct. App. 1985). Hatfield was clearly a third-party beneficiary to the Transfer Agreement such that, under California law, she can enforce the choice of law provision.

The Halifax Appellees argue that, even if Hatfield is a third-party beneficiary to the Transfer Agreement, there is no indication that the parties intended to allow Hatfield to take advantage of the six-year statute of limitations established under English law. In determining the enforceability of a

---

[4]Although the issue of whether Hatfield can enforce the contract as a third-party beneficiary should be decided under English law, neither party has provided the court with information regarding the relevant English law. Nonetheless, a cursory examination of English law suggests that "a person who is not a party to a contract (a 'third party') may in his own right enforce a term of the contract if - - (a) the contract expressly provides that he may." Contract (Rights of Third Parties) Act, 1999, ch. 31, § 1.

choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state, in this case California. *See Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995). "If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention . . . ." *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 827 n.7 (Ct. App. 2007). Here, the text of the Transfer Agreement, which provides that the agreement "shall be governed by and construed under English law," could not be clearer.

Once it determines the parties' intention, a California state court will next analyze whether: (1) the chosen jurisdiction has a substantial relationship to the parties or their transaction; or (2) any other reasonable basis for the choice of law provision exists. *Hughes Elecs. Corp. v. Citibank Del.*, 15 Cal. Rptr. 3d 244, 248 (Ct. App. 2004). If either one of these tests is met, then a California court will enforce the provision unless the chosen jurisdiction's law is contrary to California public policy. *Id.*; *see also Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 46 Cal. Rptr. 2d 33, 41 (Ct. App. 1995) ("If California has a materially greater interest than the chosen state [in the determination of the issue], the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (internal quotation marks omitted)).

**[2]** Here, a California court would enforce the Transfer Agreement's choice of law provision because England has a substantial relationship to the parties and permitting the parties to extend the statute of limitations is not contrary to California public policy. The fact that Halifax is a United Kingdom company is sufficient to establish a substantial relationship between England and the parties, such that there is a reasonable basis for applying the English choice of law provision. *See Hambrecht & Quist*, 46 Cal. Rptr. 2d at 41 (finding that "the parties to a contract have a substantial relationship

with the chosen state if one or more of them is incorporated there."). Moreover, under California law, a choice of law provision also incorporates the governing law's statute of limitations. "[A] standard choice-of-law provision (i.e., one which incorporates the 'law(s)' of a specified jurisdiction) includes the chosen state's statutes of limitations." *Id.* at 38; *see also Boracchia v. Biomet, Inc.*, No. C-07-0650, 2008 WL 512721, at *3 (N.D. Cal. Feb. 25, 2008) ("Under California law, a contract's choice of law provision will identify what state's substantive law, including the statute of limitations, will be applied.").

**[3]** Furthermore, there is no basis in the record to conclude that applying the longer English limitations period would violate California public policy. *See Hambrecht & Quist*, 46 Cal. Rptr. 2d at 42 ("In general, California courts have permitted contracting parties to modify the length of the otherwise applicable California statute of limitations, whether the contract has extended or shortened the limitations period."). Although there is a general public policy interest in preventing the prosecution of stale claims, that policy is not all-encompassing. Indeed, Section 360.5 of the California Code of Civil Procedure permits waivers of the California statute of limitations defense provided that such a waiver is in writing and does not extend the limitations period for more than four years at a time. Thus, California appears willing to subordinate its interest in disposing of stale claims to the parties' desire to have a forum in which to litigate their disputes. Accordingly, the enforceability of the English choice of law provision encompasses the English statute of limitations as well.

The Halifax Appellees argue that the parties to the Transfer Agreement never intended the choice of law provision to include the English statute of limitations. In support of their argument they cite to a federal securities law case, *Des Brisay v. Goldfield Corp.*, 637 F.2d 680, 682 (9th Cir. 1981), for the proposition that "[l]imitations periods are usually considered

to be related to judicial administration and thus governed by the rules of local law, even if the substantive law of another jurisdiction applies." As this is a diversity action, California law, not federal law, controls, and the six-year English statute of limitations is, therefore, applicable.

Alternatively, the Halifax Appellees also argue that, even if the English choice of law provision encompasses the English statute of limitations and can be enforced by Hatfield, it applies only to Hatfield's contract claims and not to her fraud or other tort claims. The California Supreme Court has held that "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1155 (Cal. 1992). All of Hatfield's claims, including her tort claims, relate to the Halifax Appellees' alleged failure to fulfill the promise of free shares. That promise was contained in the Transfer Document, but not delivered on. All of Hatfield's claims are, therefore, governed by the English statute of limitations.

**[4]** Having determined that the English statute of limitations applies, it is necessary to determine what law governs tolling. Even if the English statute of limitations applies, Hatfield's action is not timely unless the limitations period is tolled. Normally, when a foreign jurisdiction's limitations period is found to apply, that jurisdiction's tolling laws will also apply. *See* Restatement (Second) of Conflict of Laws § 142 cmt. f (1971) ("The majority rule is that the forum will apply the tolling provision of the state referred to by its borrowing statute."); Uniform Conflict of Laws - Limitations Act § 3 ("If the statute of limitations of another state applies to the assertion of a claim in this State, the other state's relevant statutes and other rules of law governing tolling and accrual

apply in computing the limitation period . . . .”). Because we hold that Hatfield’s claims are governed by the English statute of limitations, the tolling law to be applied would be that of English law.

**[5]** However, although Hatfield has raised and argued the issue concerning application of the foreign law’s statute of limitations, neither side has mentioned the issue of England’s tolling law, despite having the opportunity to do so. *See Stuart v. United States*, 813 F.2d 243, 251 (9th Cir. 1987) (“We realize that we may consider foreign law materials at any time, whether or not submitted by a party . . . [but,] [a]bsent special circumstances, parties should present issues of foreign law in their appellate briefs at the latest.” (citations omitted)), *rev’d on other grounds*, 489 U.S. 353 (1989). Moreover, neither party, aside from some passing references in Hatfield’s brief, discusses the tolling issue or provides the court with any meaningful information.

**[6]** As a result of the failure of the parties to provide any materials, California law provides that by default a court will look to California tolling law. Under California’s choice of law rules, a California court “will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.” *Hurtado v. Superior Court*, 522 P.2d 666, 670 (Cal. 1974). Although this court could undertake an independent investigation of English law, we are not experts on such law. Moreover, by citing only California tolling law, the parties have acquiesced in the application of that law. *See Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453, 1458 (9th Cir. 1989) (“Where no authority, or insufficient authority, is presented by the parties about foreign law, a court may conclude that the parties have acquiesced in the application of the law of the forum.”); *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 845 (9th Cir. 2001) (affirming district court’s decision to apply Washington law despite the agreement’s English choice of law provision where: (1) the complaint and answer did not mention

the potential application of English law; (2) the pre-trial order did not refer to English law; (3) both parties argued Washington law; and (4) neither party urged the application of English law or cited a conflict with Washington law in pre-trial briefing to the district court).

## (2)

## Hatfield's Individual Claims

[7] Under California law, Hatfield's individual claims were equitably tolled by the timely filing of her nearly identical class action in New Jersey state court. Equitable tolling under California law is a judicially created doctrine that operates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly. *See Addison v. State*, 578 P.2d 941, 945 (Cal. 1978) ("[T]he equitable tolling doctrine fosters the policy of the law of this state which favors avoiding forfeitures and allowing good faith litigants their day in court."). Three factors are taken into consideration when deciding whether to apply equitable tolling under California law: (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim. *Collier v. City of Pasadena*, 191 Cal. Rptr. 681, 685 (Ct. App. 1983); *see also Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir. 1984) (finding that "California equitably tolls its statutes of limitation during the pendency of an earlier case provided there is 'timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff' " (quoting *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir. 1983))).[5] " 'As with other general equitable princi-

---

[5]Significantly, the "earlier case" referred to in *Mayes*, which the Ninth Circuit said might be the subject of equitable tolling, was an action filed in another jurisdiction. *Mayes* involved a legal malpractice action brought

ples, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute.' " *Lantzy v. Centex Homes*, 73 P.3d 517, 524 (Cal. 2003) (quoting *Addison*, 578 P.2d at 945).

**[8]** The doctrine applies here where: (1) the New Jersey state court action was filed within the six-year English statute of limitations, thus providing the Halifax Appellees with timely notice of Hatfield's claims; (2) there is no showing that the Halifax Appellees were prejudiced in gathering evidence to defend these claims because the two actions were substantially similar; and (3) Hatfield timely filed the district court action on the same day that the New Jersey Appellate Division upheld the dismissal of her New Jersey state court action.

Moreover, California courts have permitted a plaintiff to take advantage of tolling based on the filing of a prior class

---

by the plaintiff, a New York resident, in New York federal court. The New York court dismissed the action for lack of personal jurisdiction, a decision which was later affirmed by the Second Circuit. The plaintiff then brought a legal malpractice claim against the same defendant in the California district court. *Mayes*, 729 F.2d at 606. The defendant moved to dismiss, arguing that the plaintiff's claim was barred by California's one-year statute of limitations for legal malpractice actions. *Id.* at 607. In opposition, the plaintiff argued that the New York action equitably tolled the statute of limitations and requested leave to amend to allege equitable tolling. *Id.* The district court, however, dismissed the action without leave to amend. *Id.* The Ninth Circuit reversed, finding that the district court abused its discretion in not permitting amendment because the equitable tolling doctrine could apply where: (1) the New York action was commenced within the one-year California limitations period; (2) the New York action gave the defendant notice of the claims against him so that he could start gathering evidence and there was no prejudice to the defendant since the complaints in the two actions were nearly identical; and (3) the plaintiff demonstrated good faith and reasonable conduct by filing her second claim a short time after the New York action was dismissed. *Id.* at 608.

action. In *Becker v. McMillin Construction Co.*, 277 Cal. Rptr. 491 (Ct. App. 1991), for example, a plaintiff homeowner, although not a named plaintiff in the earlier class action, was permitted to bring a subsequent individual action despite the fact that the statute of limitations had run. Although the case was decided under a tolling rule discussed further *infra*, the California Court of Appeal held that "the *equities* demand that tolling be permitted . . . [because] the substantive class and individual claims were sufficiently similar to give [the defendant] notice of the litigation for purposes of applying the tolling rule." *Id.* at 496 (emphasis added).

The Halifax Appellees argue that filing the New Jersey state court action on the last day of the six-year limitations period demonstrates Hatfield's attempt to circumvent California's statute of limitations. Hatfield's motivation for filing her first action on the last day of the limitations period is irrelevant to an analysis concerning the application of equitable tolling, which focuses on a plaintiff's good faith and reasonable conduct in filing a second action. Here, Hatfield acted in a good faith belief that the six-year statute of limitations was tolled during the pendency of the New Jersey state court action. Furthermore, Hatfield filed the New Jersey state court action within the limitations period established by English law, and she filed the district court action on the day that tolling ceased. Such timely filing, even if done on the last day, is not evidence of bad faith or forum shopping. Moreover, this bad faith argument is hardly persuasive considering that if Hatfield had filed in California first, the Halifax Appellees would have had to contend with two class actions instead of just one.

The Halifax Appellees also argue that an action dismissed for lack of personal jurisdiction cannot be the basis for equitable tolling. They provide no California cases supporting this proposition, and there is no reason why a California state court would not apply equitable tolling here. *See Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1175 (9th Cir. 1986) (finding in

a Title VII case that the defendant's "argument that equitable tolling is not available because the action [the plaintiff] relies on to establish tolling was filed in a court without subject matter jurisdiction is unpersuasive," reasoning that "[t]he purpose of the statute, the notice to defendant, and the diligence demonstrated by the plaintiff determine the availability of tolling, not the presence or absence of subject matter jurisdiction . . . [and] courts [in other jurisdictions] have equitably tolled statutes of limitations based on actions mistakenly filed in courts without personal jurisdiction"), *amended by* 815 F.2d 570 (9th Cir. 1987). Although the usual scenario in which California has applied equitable tolling involves a situation where the plaintiff possesses several legal remedies and reasonably and in good faith pursues one of them to try to prevent further damages, *Hu v. Silgan Containers Corp.*, 83 Cal. Rptr. 2d 333, 339 (Ct. App. 1999), this in no way implies that California would not apply equitable tolling here. Furthermore, none of the factors used in deciding whether equitable tolling applies is affected by the fact that the New Jersey state court action was filed in a court that lacked personal jurisdiction.

### (3)

### The Class Action Claims

[9] While there is no California precedent directly on point, based on closely analogous precedent, we see no reason why California's equitable tolling doctrine would not also apply to the claims of its unnamed putative class members who, like Hatfield, are California residents. First, the California Supreme Court has indicated a general agreement with tolling in the class action context, going so far as to cite with approval the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 934-35 (Cal. 1988). In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as

to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. In *Jolly*, 751 P.2d 934-35, the California Supreme Court noted with approval the two major policies that underlie the *American Pipe* tolling rule, the first of which is most relevant here. That policy protects the class action device because, without it, potential class members would be induced to file protective actions to preserve their claims, thus depriving class actions of their ability to secure "efficiency and economy of litigation."[6] *Id.* at 935 (quoting *American Pipe*, 414 U.S. at 553). In *Jolly*, despite the endorsement of *American Pipe*, the court rejected its application under the facts of that case.[7] *Id.* at 935-36.

The Halifax Appellees argue that this court's recent decision in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), bars Hatfield's class action. The *Clemens* panel, applying California law, refused to allow *American Pipe* tolling in a case where a plaintiff sought to use a class action filed in one jurisdiction to toll an action later filed in another (a "cross-jurisdictional action"). The plaintiff in *Clemens*, relying on *American Pipe*, argued that the limitations period should have been tolled by the filing of a similar class action in Illinois, of which the plaintiff was a class member. *Id.* at 1024. The *Clemens* court reasoned that, although "[i]n some instances, a plaintiff can rely on the filing of a prior class action to vindicate the right in question and toll the statute in the event that the class is not ultimately certified," California has not adopted such *American Pipe* tolling where

---

[6]The second policy underlying *American Pipe* is to preserve the purpose behind the statute of limitations by ensuring fairness to the defendant while preventing claims from plaintiffs who slept on their rights. *Jolly*, 751 P.2d at 935.

[7]Specifically, the court found that the prior class action "neither sufficiently put defendants on notice of the substance and nature of plaintiff's claims, nor served to further economy and efficiency of litigation, so as to justify affording plaintiff shelter under the protective umbrella of *American Pipe*." *Id.* at 936.

the class action was filed in a foreign jurisdiction. *Clemens*, 534 F.3d at 1025 (concluding that "California's interest in managing its own judicial system counsel[s] us not to import the doctrine of cross-jurisdictional tolling[, under *American Pipe*,] into California law."). Other courts have, under state law, similarly refused to adopt cross-jurisdictional tolling, reasoning that "[u]nless all states simultaneously adopt the rule of cross-jurisdictional class action tolling, any state which independently does so will invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run." *See, e.g.*, *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104 (Ill. 1998) (finding that the "adoption of cross-jurisdictional class tolling in Illinois would encourage plaintiffs from across the country to bring suit here following dismissal of their class actions in federal court").

Although the *Clemens* decision would foreclose application of *American Pipe* here, it does not dictate a similar rejection of California's equitable tolling doctrine, especially as it applies to California's own residents. Although the two types of tolling—equitable and *American Pipe* —overlap to some extent, *see Becker*, 277 Cal. Rptr. at 496, and even though California courts have treated them at times as interchangeable, they are not congruent. The Halifax Appellees themselves concede that "the equitable tolling applied to individual actions is distinct from *American Pipe* tolling." They cite *Newport v. Dell, Inc.*, No. CV-08-0096, 2008 WL 4347311, at *4 n.8 (D. Az. Aug. 21, 2008), a case decided shortly after *Clemens*, which stated that "[t]he class-action tolling discussed in *American Pipe* and *Crown* is a species of legal tolling, not equitable tolling." Thus, by the Halifax Appellees' own admission, *Clemens*, which only rejected the application of *American Pipe* tolling in a cross-jurisdictional action, does not affect the application of California's equitable tolling doctrine, which covers situations beyond those covered by *American Pipe*. *See McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1032 (Cal. 2008) ("[California's equitable

tolling] may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason.").

[10] California's equitable tolling doctrine is a policy adopted and approved specifically by the California courts. Its purpose is to toll the statute of limitations in favor of a plaintiff who acted in good faith where the defendant is not prejudiced by having to defend against a second action. *See Mayes*, 729 F.2d at 608. As already noted, California courts have permitted *individual* plaintiffs to take advantage of the *American Pipe* tolling rule where the prior class action provided the defendant with sufficient notice of the claims made against it. Thus, in *Becker*, the plaintiff homeowner was permitted to bring a subsequent individual action following the expiration of the statute of limitations. 277 Cal. Rptr. at 496. Certification in a prior class action, filed by a fellow homeowner in his development, was denied because common questions of law and fact were lacking as a result of the differences in causation and damages for each homeowner. *Id.* at 493. The court held that the prior class action tolled the statute of limitations for the individual action. *Id.* at 496. According to the *Becker* court, the California Supreme Court's decision in *Jolly* "left open the possibility of applying the [*American Pipe*] tolling doctrine even . . . [where] a lack of commonality had been found, if the circumstances so required." *Id. Becker* noted that the *Jolly* court's refusal to apply *American Pipe* tolling centered on the fact that, because, in personal-injury mass-tort class-action claims, each class member's right to recover depends on facts particular to his or her case, such claims are presumptively incapable of apprising defendants of the substantive claims being brought against them. *Id.* at 495 (stating that the court in *Jolly* "issued a warning: in the application of the *American Pipe* rule to personal injury mass tort cases, the presumption should be that 'lack of commonality will defeat certification and preclude application of the *American Pipe*

tolling doctrine.' ''). In *Becker*, on the other hand, "the substantive class and individual claims were sufficiently similar to give [the defendant] notice of the litigation for purposes of applying the [*American Pipe*] tolling rule." *Id.* at 496. Thus, "tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence." *Id.* at 495 (citing *Jolly*, 751 P.2d at 937). Thus, *Jolly* and *Becker* would clearly permit equitable tolling at least as to any class members who individually subsequently filed a similar claim.[8] In light of California's endorsement of class actions generally, *Howard Gunty Profit Sharing Plan v. Superior Court*, 105 Cal. Rptr. 2d 896, 901 (Ct. App. 2001), we see no reason why, in an equitable tolling situation, California would require each individual California resident who is a member of the Hatfield class to file individually and burden the courts with numerous suits. Thus, every indication is that California would at least apply equitable tolling to claims made by its own residents.

---

[8]Although *American Pipe* is clearly applicable to individual actions, some federal decisions have refused to allow the doctrine to toll the limitations period for subsequently filed class actions. *See Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987) ("We agree with the Second Circuit that to extend tolling to class actions 'tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted parameters into the range of abusive options.' " (quoting *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) (alteration in original))). In *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139, 1149 (9th Cir. 2000) (en banc), however, the Ninth Circuit extended *American Pipe* to toll the claims of an entire class where "[p]laintiffs . . . are not attempting to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class." Whether the subject class action was actually trying to relitigate the certification issue was disputed by one of the dissents. *Id.* at 1157-58 (Graber, J., dissenting in part). However, the current action is clearly not an instance in which Hatfield is trying to reargue a denial of class certification because of a failure to meet Rule 23 of the Federal Rules of Civil Procedure or its state counterpart. Rather, the previous class action was dismissed for lack of in personam jurisdiction. Thus, if Hatfield had brought the original class action in California, *American Pipe* would permit tolling for the entire class action.

**[11]** Although we conclude that California would allow its resident class members to reap tolling benefits under its equitable tolling doctrine, the same cannot be said for the non-resident class members. California's borrowing statute, for example, prevents non-residents from prosecuting an action in a California court where such action would be barred under the statute of limitations of the jurisdiction whose law would otherwise govern. Cal. Civ. Proc. Code § 361; *Cossman v. DaimlerChrysler Corp.*, 133 Cal. Rptr. 2d 376, 381 (Ct. App. 2003). At the same time, the borrowing statute also expresses California's interest in preserving the claims of its residents. The borrowing statute provides:

> When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, *except in favor of one who has been a citizen of this State*, and who has held the cause of action from the time it accrued.

Cal. Civ. Proc. Code § 361 (emphasis added). In other words, California allows only its citizens to utilize this advantageous statute of limitations provision. If non-residents are denied the opportunity to take advantage where California law provides a longer statute of limitations for its citizens, they certainly should not be permitted to take advantage of the state's tolling doctrine, which lengthens that limitations period. Furthermore, allowing non-resident class members to pursue otherwise expired claims here would place a significant burden on California courts. *See Shiley Inc. v. Superior Court*, 6 Cal. Rptr. 2d 38, 43 (Ct. App. 1992) (recognizing the "important public interest[ ] . . . in avoiding congesting California courts and overburdening California taxpayers"). At the same time, California's interest in deterring wrongful conduct will be vindicated by allowing the claims of California residents to

proceed. *Campbell v. Parker-Hannifin Corp.*, 82 Cal. Rptr. 2d 202, 206 (Ct. App. 1999).

**[12]** On the other hand, California has a strong interest in providing a remedy for wrongs committed against its citizens. In the prior class action, the New Jersey Appellate Division concluded that it would exercise specific jurisdiction over Halifax only on behalf of the one named plaintiff who was a New Jersey resident at the time the alleged wrongful acts were committed. *Hyams v. Halifax PLC*, No. A-1078-04T3, 2005 WL 3441230, at *7 (N.J. Super. Ct. App. Div. Dec. 16, 2005). In making its decision, the court took into consideration that "New Jersey has a strong interest in ensuring that a New Jersey resident claiming breach of contract and fraud obtains relief if a right to such relief is established." *Id.* at *8. California would appear to have a similar interest with regard to its residents, particularly here where the previous court refused to vindicate their claims on account of their non-resident status. Refusing to apply California's equitable tolling doctrine would leave all California resident class members without a remedy, unless they immediately had filed individual actions upon dismissal of the New Jersey state court action. Such a result would be particularly unfair here, considering the likelihood that at least some class members may have relied on the filing of Hatfield's original class action to vindicate their rights. On the other hand, California has no similar interest in protecting claims by non-residents. Moreover, allowing only the claims of California residents to proceed would address the concern foreseen by several state courts that, by permitting cross-jurisdictional tolling, California would become a forum for expired claims brought by non-resident plaintiffs from around the country where their home state would not permit the action. *See, e.g.*, *Portwood*, 701 N.E.2d at 1104; *see also Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) ("Adoption of [cross-jurisdictional tolling] would run the risk that Tennessee courts would become a clearinghouse for cases that are barred in the

jurisdictions in which they otherwise would have been brought.").

## CONCLUSION

**[13]** The district court's judgment dismissing Hatfield's class action as untimely with respect to California residents is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.