Ali ASGHARI, Augustino Lamia, Barbara Calver, Supalak Prasobratana, and Daniel Tran, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

VOLKSWAGEN GROUP OF AMERICA, INC., et al., Defendants.

Case No. CV 13–02529 MMM (VBKx).

United States District Court, C.D. California.

Signed Nov. 4, 2013.

---

Craig L. Winterman, Larry Dean Smith, Jr., Herzfeld and Rubin LLP, Los Angeles, CA, Jeffrey L. Chase, Michael B. Gallub, Herzfeld and Rubin PC, New York, NY, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

MARGARET M. MORROW, District Judge.

On May 1, 2012, Ali Asghari filed this action on his own behalf and on behalf of a nationwide class of similarly situated individuals, against Volkswagen Group of America, Inc. ("VW Group"), Volkswagen AG, and Audi AG (collectively, "defendants").[1] On August 10, 2012, Asghari filed a first amended complaint, joining Augustino Lamia, Barbara Calver, Supalak Prasobratana, and Daniel Tran as named plaintiffs (collectively, "plaintiffs").[2]

VW Group moved to dismiss the first amended complaint on March 1, 2013.[3] Plaintiffs oppose the motion.[4] Volkswagen AG and Audi AG (collectively, "VW/Audi AG") jointly filed a motion to dismiss the first amended complaint on May 16, 2013.[5] Plaintiffs oppose that motion as well.[6]

## I. BACKGROUND

### A. Facts Alleged in the First Amended Complaint

Plaintiffs are California citizens who leased or purchased allegedly defective

Payam Shahian, Karen Emily Nakon, Ramtin Shahian, Strategic Legal Practices APC, Cody R. Padgett, Jordan L. Lurie, Capstone Law APC, Los Angeles, CA, Dara Tabesh, Erotech Law Group PC, San Francisco, CA, for Plaintiffs.

1. Complaint, Docket No. 1 (May 1, 2012).

2. First Amended Complaint ("FAC"), Docket No. 17 (Aug. 10, 2012).

3. Volkswagen Group of America, Inc.'s Motion to Dismiss the First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) ("VW Group Motion"), Docket No. 25 (Oct. 3, 2012).

4. Opposition to Motion to Dismiss ("VW Group Opp."), Docket No. 35 (Nov. 6, 2012).

5. Volkswagen AG's and Audi AG's Motion to Dismiss the First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) ("VW/Audi Motion"), Docket No. 80 (May 16, 2013).

6. Plaintiffs' Opposition to Volkswagen AG's and Audi AG's Motion to Dismiss the First Amended Complaint ("VW/Audi Opp."), Docket No. 102 (July 8, 2013).

Audi A4 and A5 vehicles designed, manufactured, distributed, marketed, sold and/or leased by defendants.[7] Plaintiffs bring this lawsuit on their behalf and on behalf of a nationwide class of all current and former owners or lessees of any 2007 through 2013 model year Audi or Volkswagen vehicle equipped with a 2.0 litre turbocharged engine (the "class vehicles").[8] Plaintiffs seek to represent three sub-classes: all members of the nationwide class who reside in the state of California ("the California sub-class"); all members of the nationwide class who reside in the state of New York ("the New York sub-class"); and all members of the nationwide class who purchased or leased their vehicles in the state of California ("the Implied Warranty sub-class").[9]

Plaintiffs allege that prior to 2007, defendants knew of the following design and/or manufacturing defects in the class vehicles: (1) that the engine is unable to utilize engine oil properly; and (2) that the engine improperly burns off and consumes "abnormally high amounts of oil" (collectively "the oil consumption defect").[10] Plaintiffs assert that an appropriate amount of oil is essential for the engine to function properly and safely, and that the oil consumption defect prevents the engine from maintaining the proper level of oil.[11] They allege that the defect thus creates a safety risk, because it can cause engine failure while the vehicle is in operation.[12] Because the engine can allegedly fail at any time, under any driving condition, and at any speed, plaintiffs assert that the defect creates a serious risk of injury.[13]

Plaintiffs contend that the rate of oil consumption can be as high as one quart every 500 miles.[14] This high rate of consumption purportedly requires that the engine receive "substantial amounts of oil" between scheduled oil changes.[15] As a result, many consumers report that they carry an extra supply of oil in their vehicles at all times.[16]

Plaintiffs allege that the oil consumption defect was not reasonably foreseeable to the named plaintiffs or to class members,[17] and that consumers reasonably expected there would be no such defect.[18] Finally, plaintiffs assert that: (1) defendants knew or should have known of the defect;[19] (2) knew about and concealed the defect, and its attendant safety hazards, from plaintiffs and class members, at the time of sale and thereafter;[20] and (3) did not recall class vehicles despite receiving notice of the defect from internal sources.[21]

Plaintiffs plead the following claims against all defendants on their own behalf and on behalf of the nationwide class and California sub-class: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et*

---

7. FAC, ¶ 1; *id.,* ¶¶ 13–42.

8. *Id.,* ¶ 2.

9. *Id.,* ¶ 71.

10. *Id.,* ¶ 3.

11. *Id.,* ¶ 4.

12. *Id.,* ¶ 5.

13. *Id.,* ¶ 6.

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.,* ¶¶ 7–8.

18. *Id.*

19. *Id.,* ¶ 9.

20. *Id.,* ¶ 10.

21. *Id.,* ¶ 11.

*seq.,* and (2) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.* They plead claims against Volkswagen for breach of written warranty under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310 *et seq.,* and breach of express warranty under California Commercial Code § 2313. On their own behalf and on behalf of the Implied Warranty subclass, plaintiffs plead a claim for breach of implied warranty against all defendants under the Song–Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1 *et seq.* Asghari, on his behalf and on behalf of the New York sub-class, pleads a claim against all defendants for violation of the Consumer Protection from Deceptive Acts and Practices Act, New York General Business Law § 349, et seq., as well as a claim against Volkswagen for violation of express warranty under § 2–313 of New York's U.C.C. Law.

## II. DISCUSSION

### A. Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir.1988). In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).

The court must accept all factual allegations pleaded in the complaint as true, and

construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mutual Insurance Co.,* 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens,* 57 F.3d 747, 750 (9th Cir.1995). It need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. See *Ashcroft v. Iqbal,* 556 U.S. 662, 681, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[B]are assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are not entitled to an assumption of truth, quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir.2009) ("Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation").

To survive a motion to dismiss, plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. See also *id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief," ' " quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955); *Twombly,* 550 U.S. at 545, 127 S.Ct. 1955 ("While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)). See also, e.g., *Moss,* 572 F.3d at 969 ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly* ).

### B. Whether Plaintiffs State a Claim under the CLRA or the UCL

#### 1. Legal Standard Governing CLRA Claims

The CLRA makes illegal various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV.CODE § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Group, Inc.,* 135 Cal.App.4th 663, 680, 38 Cal.Rptr.3d 36 (2006) (quoting *Nagel v. Twin Laboratories, Inc.,* 109 Cal.App.4th 39, 54, 134 Cal.Rptr.2d 420 (2003)). A "reasonable consumer" is an "ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture...." *Id.* (citing 1A CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 5:17 (4th ed.2004)).

Section 1770(a)(5) prohibits "[r]epresenting that goods or services have ... characteristics, ingredients, uses, benefits, or quantities which they do not have...." In addition, § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade ... if they are of another." These sections of the CLRA encompass deceptive omissions as well as deceptive representations. *Mui Ho v. Toyota Motor Corp.,* 931 F.Supp.2d 987, 995–96 (N.D.Cal.2013) (citing *Daugherty v. American Honda Motor Company Inc.,* 144 Cal.App.4th 824, 835, 51 Cal. Rptr.3d 118 (2006)). The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Colgan,* 135 Cal. App.4th at 680, 38 Cal.Rptr.3d 36.

#### 2. Legal Standard Governing UCL Claims

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." CAL. BUS. & PROF.CODE §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.,* § 17200. The California Supreme Court has construed the term broadly. See *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) ("[Section 17200] defines 'unfair competition' to include any unlawful, unfair or fraudulent business act or practice.... Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.... By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats

them as unlawful practices that the unfair competition law makes independently actionable.... However, the law does more than just borrow. · The statutory language referring to any unlawful, unfair or fraudulent practice ... makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent" (internal quotations omitted)); see also *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.App.4th 659, 676–77, 43 Cal.Rptr.3d 148 (2006) ("The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services....' Thus, the scope of the UCL (Bus. & Prof.Code § 17200 et seq.) is 'broad.' It 'covers a wide range of conduct'" (citations and footnote omitted)).

### 3. Whether Asghari Can Assert Claims Under the CLRA or the UCL

In their moving papers, defendants argued that Asghari could not assert claims under the CLRA or the UCL, on behalf of himself or the class, because he purchased his vehicle in·New York.[22] Citing the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), defendants asserted that "a consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."[23] Because the transaction that gives rise to the claims did not take place in California, they contended, Asghari's CLRA and UCL claims should be dismissed.[24]

Plaintiffs countered that Asghari had stated viable CLRA and UCL claims despite the fact that he did not lease his vehicle in California.[25] They argued that *Mazza* is distinguishable because the transaction in that case occurred outside California *and* plaintiff was not a California resident.[26] Here, by contrast, Asghari is a California resident who uses his vehicle in California.[27] Plaintiffs also asserted ·that *Mazza* precludes the application of California law only to class members who reside in states whose consumer protection laws differ materially ·from California's.[28] They contended defendants had not shown that New York's consumer protection laws differ materially from the CLRA and/or the UCL.[29]

In *Mazza*, the Ninth Circuit considered a case in which plaintiffs successfully sought certification of a nationwide class whose members resided in 44 jurisdictions. *Id.* at 587 n. 1. The court examined the consumer protection laws of those jurisdictions and concluded that there were material differences between the California laws under which plaintiffs sued and the laws of the other states in which class members resided. See *id.* at 591 (describing differences between California's consumer protection laws and the laws of the other states). The court also noted that ' states have "an interest in applying [their] law to transactions within [their] borders," and that application of California law to

22. VW Group Motion at 8–9.

23. *Id.*

24. *Id.*

25. VW Group Opp. at 18.

26. *Id.*

27. *Id.*

28. *Id.*

29. *Id.*

class members residing in other states would "impair[ ] [states'] . . . ability to calibrate liability to foster commerce." *Id.* at 593. For these reasons, it held that each class member's consumer protection claim was governed by the consumer protection laws of the jurisdiction in which the transaction took place. *Id.* at 594. Accordingly, it vacated the district court's class certification order. *Id.*

The principle articulated in *Mazza* "applies generally and is instructive even when addressing a motion to dismiss." *Frezza v. Google Inc.*, No. 5:12–cv–00237–RMW, 2013 WL 1736788, *6 (N.D.Cal. Apr 22, 2013). Applying *Mazza*, other courts have held that non-California residents injured by transactions that occurred outside California are precluded from asserting claims under California's consumer protection laws. See *id.*; *Granfield v. NVIDIA Corp.*, No. C 11–05403 JW, 2012 WL 2847575, *3 (N.D.Cal. July 11, 2012) (dismissing CLRA and UCL claims asserted by a Massachusetts resident who purchased her computer in that state as barred by *Mazza*); *Horvath v. LG Elecs. Mobilecomm U.S.A.*, No. 3:11–CV–01576–H–RBB, 2012 WL 2861160, *3–4 (S.D.Cal. Feb. 13, 2012) (same).

*Mazza* did not, however, create a "general rule that 'where an out-of-state plaintiff claims to have been deceived or harmed as a result of misrepresentations or omissions received outside of California, that plaintiff's consumer protection claims must be brought under that plaintiff's own state laws.'" *Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1161 (C.D.Cal.2012); *Allen v. Hylands, Inc.*, No. CV 12–01150 DMG, 2012 WL 1656750, *2 (C.D.Cal. May 2, 2012). Rather, "*Mazza* merely precludes application of California law to class members from states whose consumer protection laws differ materially from California's." *Allen*, 2012 WL 1656750 at *2; see

also *Frezza v. Google Inc.*, No. 5:12–cv–00237–RMW, 2013 WL 1736788, *6–7 (N.D.Cal. Apr. 22, 2013) ("Applying the *Mazza* principles and California's choice-of-law analysis to the facts of this case, it is readily apparent that plaintiffs' UCL claims are precluded. . . . [M]aterial differences . . . exist between the two states' consumer protection laws"); see also *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 919–20, 103 Cal. Rptr.2d 320, 15 P.3d 1071 (2001) ("Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California. The fact that two or more states are involved does not in itself indicate there is a conflict of laws problem").

In their motion, defendants did not argue that the CLRA and the UCL differed materially from equivalent New York consumer protection laws. They thus gave the court no basis to conclude that Asghari could not assert claims under California law. See *Allen*, 2012 WL 1656750 at *2 ("Defendants do not argue that Florida or Georgia have materially different consumer protection laws than California. Accordingly, there is no basis at this time for the Court to conclude that it would be inappropriate to apply California law to Plaintiffs' claims"); see also *Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 539 (C.D.Cal.2012) ("[D]efendants bear the burden of showing that foreign law, rather than California law, should apply"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 540 (C.D.Cal. 2011) ("Defendant has the burden . . . . to convince this Court of 'material' differences in the law, as shown 'on the facts of this case.' . . . Because Defendants have not identified any specific state's law or articulated any argument, beyond citation to other cases, to indicate there is a con-

flict, Defendants have not met their burden"); *Church v. Consolidated Freightways,* No. C–90–2290 DLJ, 1992 WL 370829, *4 (N.D.Cal. Sept. 14, 1992) ("This Court generally presumes that California law will apply unless defendants demonstrate conclusively that the laws of the other states will apply").

Courts have, however, recognized that there are material differences between California and New York consumer protection laws. See *Mazza,* 666 F.3d at 591 ("California also requires named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes do not," citing *Stutman v. Chem. Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000)); *Keegan,* 284 F.R.D. at 544–45 ("If the court were to certify a single UCL/CLRA class to which California law—including the statutes of limitations for UCL and CLRA claims—applies, [it] would undoubtedly include New York and Florida plaintiffs whose claims are time-barred under their own states' laws. This would expand defendants' liability beyond the liability they would face if Florida and New York plaintiffs sued under the laws of those states"). The parties' briefs, however, did not highlight whether there were actual variations in the state laws at issue in this litigation. Compare *Mazza,* 666 F.3d at 591 ("In its briefing, Honda exhaustively detailed the ways in which California law differs from the laws of the 43 other jurisdictions in which class members reside"). The court therefore deferred ruling on defendants' motion to dismiss Asghari's California claims and directed the parties to submit supplemental briefing as to whether there are material differences between the consumer protection and express and implied warranty laws of New York and California, so that the court could determine whether substantive variations between the two states' laws weighed against the extraterritorial application of California law to Asghari's claims. Defendants filed a supplemental brief on August 8, 2013.[30] On August 19, 2013, plaintiffs filed a response, in which Asghari elected to proceed under New York law only and withdrew his California claims.[31]

### 4. Whether Plaintiffs' CLRA Claims Should Be Dismissed for Failure to Comply with Statutory Notice Requirements

A plaintiff seeking damages under the CLRA must provide notice to the defendant under California Civil Code § 1782(a). The statute states that at least thirty days prior to commencing an action for damages under the CLRA, the consumer must (1) notify the person alleged to have committed the violations, and (2) demand that the person "correct, repair, replace, or otherwise rectify the goods or services" in question. CAL. CIV.CODE § 1782(a). The notice must "be in writing and ... be sent by certified or registered mail, return receipt requested," to the place where the transaction occurred or to the person's principal place of business in California. *Id.*

■ When a named plaintiff provides written notice to a defendant not only on his own behalf but on behalf of similarly situated consumers, the named plaintiff's notice suffices to satisfy § 1782 for all class members. *In re Toyota Motor Corp.*

---

**30.** Supplement to Defendants' Motion to Dismiss, Docket No. 116 (Aug. 8, 2013).

**31.** Statement of Plaintiffs in Response to Defendants' Supplemental Brief in Support of Its Motion to Dismiss, Docket No. 119 (Aug. 19, 2013), ¶ 1(a). That same day, defendants filed a pleading stating that they were in agreement with plaintiff's decision. (Notice Confirming Agreement, Docket No. 120 (Aug. 19, 2013).)

*Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F.Supp.2d 1145, 1174–75 (C.D.Cal.2010) (holding that one or more named plaintiffs may satisfy the notice requirements of § 1782 on behalf of the entire putative class); *Sanchez v. Wal–Mart Stores, Inc.*, No. Civ. S–06–cv–2573 DFL KJM, 2007 WL 1345706, *3 (E.D.Cal. May 8, 2007) ("In her amended complaint, Sanchez alleges that another class member, Salvador Sanchez, sent defendants notice on November 2, 2005. In his letter, Salvador Sanchez claimed that '[the] stroller has a dangerous and defective locking mechanism pinch point which creates an unreasonable danger of personal injury to all potential users.' Moreover, Salvador Sanchez stated that he was providing defendants statutory written notice, as required by the CLRA, on behalf of himself and a class of similarly situated consumers.... The 2005 notice, although it came from another class member, nonetheless satisfied § 1782(a) because it notified defendants of the stroller's alleged defect and of a potential class action lawsuit"). A person who lacks standing to sue under the CLRA cannot provide proper notice to a defendant on behalf of the class, however. See *Wehlage v. EmpRes Healthcare Inc.*, No. C 10–5839 CW, 2012 WL 380364, *7 (N.D.Cal. Feb. 6, 2012).

▪ Plaintiffs allege in their first amended complaint that "through ... As- ghari, [they] have provided all Defendants with notice of their alleged violations of the CLRA pursuant to California Civil Code § 1782(a)."[32] Asghari's notice letter identified an "excessive oil consumption defect" as a violation of the CLRA, and asserted that class vehicles "present a safety hazard" because they can lead to engine failure.[33] The letter states that it is a notice pursuant to § 1782 sent "on behalf of ... Asghari, and all current and former United States owners or lessees of any 2007 through 2012 model year Audi or Volkswagen vehicles equipped with a 2.0 liter turbocharged engine."[34] Assuming that Asghari can assert a claim under the CLRA, this letter is sufficient notice of potential class claims for purposes of § 1782.[35]

As noted, however, Asghari has since withdrawn his CLRA claim. Consequently, the other named plaintiffs and class members cannot rely on Asghari's CLRA letter. Accordingly, the court dismisses plaintiffs' CLRA claims with leave to amend to include allegations concerning other named plaintiffs' satisfaction of the thirty day notice requirement.

### 5. Whether the CLRA Claims of Plaintiffs Lamia, Calver, and Prasobratana Are Time–Barred

The limitations period for CLRA claims is three years. CAL. CIV. CODE § 1783. Defendants argue that the limitations peri-

---

**32.** FAC, ¶ 93.

**33.** Request for Judicial Notice, Exh. 4, Docket No. 35–5 (Nov. 6, 2012). The court considers Asghari's letter because it is incorporated into the complaint by reference (see FAC, ¶ 93), and because defendants do not dispute the authenticity of the letter, *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C–12–06355 JCS, 2013 WL 1632697, *2 n. 2 (N.D.Cal. Apr. 16, 2013) (considering a CLRA notice letter incorporated into the complaint by reference); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (holding that courts may examine "documents incorporated into the complaint by reference").

**34.** *Id.*

**35.** The letter suffices, however, only to satisfy the notice requirement for class members who purchased or leased 2007 through 2012 models of the class vehicles; it does not mention 2013 models of any vehicles manufactured by defendants.

od on plaintiffs' CLRA claims began to run on the date they purchased or leased their vehicles from an authorized Volkswagen/Audi dealer. The complaint alleges that Lamia purchased his vehicle in 2007,[36] and that Prasobratana purchased his in 2008.[37] Calver allegedly purchased a used 2008 Audi A4 from a third party in approximately 2011;[38] defendants argue that the statute of limitations began to run on her claim when the third party purchased her vehicle from an authorized Audi dealer in 2008.[39] Asghari commenced this action on May 1, 2012. Defendants contend that the Lamia's, Calver's, and Prasobratana's CLRA claims are time-barred because the original complaint in this action was filed more than three years after the date on which their allegedly defective vehicles were purchased.[40]

Under the CLRA, the limitations period begins to run on the date the improper consumer practice was committed. CAL. CIV.CODE § 1783 ("Any action brought under the specific provisions of [the CLRA]

shall be commenced not more than three years *from the date of the commission of such method, act, or practice*" (emphasis added)). In this context, that would be the date plaintiffs purchased or leased their vehicles. See *Keegan,* 284 F.R.D. at 544 ("Absent application of the delayed discovery rule, the statute of limitations would have begun to run on the date the car was purchased or leased"); see also *Falk v. Gen. Motors Corp.,* 496 F.Supp.2d 1088, 1100 (N.D.Cal.2007) (implying that statute of limitations on CLRA claim would begin to run on the date that plaintiffs purchased their allegedly defective vehicles, if the discovery rule did not apply). Cf. *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 534 (N.D.Cal.2012) (stating that the limitations period on a CLRA claim began to run when a consumer purchased allegedly mislabeled ice tea).

Defendants acknowledge that Calver allegedly purchased her vehicle used from a third party in 2011, less than three years before Asghari filed the original complaint in this action.[41] They argue, however, that

---

**36.** FAC, ¶ 19.

**37.** *Id.,* ¶ 34.

**38.** *Id.,* ¶ 25.

**39.** VW/Audi Motion at 7.

**40.** *Id.* The parties appear to assume that the statute of limitations for the claims of Lamia, Calver, and Prasobratana were tolled by Asghari's filing of the original complaint on May 1, 2012. The filing of a class action complaint tolls the running of the statute of limitations for all putative class members. *Uddin v. Radio Shack, Inc.,* No. SACV 11–0398–CAS, 2013 WL 1767963, *7 (C.D.Cal. Apr. 22, 2013); see also *Hatfield v. Halifax PLC,* 564 F.3d 1177, 1187 (9th Cir.2009) ("the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," quoting *American Pipe & Construction Co. v. Utah,* 414 U.S. 538,

94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). Inasmuch as Lamia, Calver, and Prasobratana are members of the putative class defined in Asghari's original complaint, the filing of that complaint tolled the statutes of limitations for their claims. Under Ninth Circuit law, moreover, "[a]n amendment adding a party plaintiff relates back to the date of the original pleading ... when: 1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff." *Immigrant Assistance Project of L.A. County Fed'n of Labor (AFL–CIO) v. INS,* 306 F.3d 842, 857 (9th Cir.2002). These requirements appear to be met in this case. Consequently, the court will determine whether plaintiffs' claims are time-barred using May 1, 2012 as the date their action commenced.

**41.** VW Group Reply at 12 n. 4; VW/Audi Reply at 15 n. 4.

the statute of limitations for Calver's claims began to run when her vehicle was first sold to a third-party in 2008.[42] The authority defendants cite in support of this arguments is *Keegan,* 284 F.R.D. at 539. *Keegan* did not, however, consider when the statute of limitations begins to run on the claim of a plaintiff who purchases a used vehicle from a third party and that vehicle has purported manufacturing or design defects that were not disclosed by the manufacturer. Defendants have not cited, and the court has not identified, any authority addressing this specific question.

Even if the court were to assume that the statute of limitations on Calver's claims began to run when the individual who sold it to her first purchased the car from an Audi dealer, however, the complaint does not allege that that purchase occurred more than three years before Asghari filed this action. Defendants assert it can be inferred that Calver's vehicle was purchased from an authorized Audi dealer in 2008 because "Calver's vehicle has an in service date of March 26, 2008."[43] That fact is alleged nowhere in the complaint, however, nor is it established by any materials incorporated into the complaint by reference. Consequently, the court cannot consider the fact for purposes of ruling on defendants' motion to dismiss. See *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir.2010) ("A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint"); *Audio Marketing Services, S.A.S. v. Monster Cable Products, Inc.,* No. C 12–04760 WHA, 2013 WL 633202, *6 (N.D.Cal. Feb. 20, 2013) ("When a claim is challenged as violating the statute of limitations, courts are limited to the facts alleged in the complaint"). For the same reason, the court must also disregard defendants' representations that Calver's vehicle was "purchased ... in March 2008."[44] Because the complaint does not indicate that either Calver or the third party from which she purchased the vehicle first bought the car outside the limitations period, the court declines to dismiss Calver's CLRA claim as time-barred at this time.

■ The complaint does allege that Lamia and Prasobratana's purchased their vehicles more than three years before Asghari commenced this action. "Plaintiffs contend, however, that their CLRA claims are not time-barred because the limitations period was tolled by the delayed discovery rule."[45] The delayed discovery rule tolls the statute of limitations on CLRA claims. See *Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1134, 1141 (C.D.Cal.2010); *Keilholtz v. Lennox Hearth Products Inc.,* No. C 08–00836 CW, 2009 WL 2905960, *3 (N.D.Cal. Sept. 8, 2009). To invoke the delayed discovery rule, a plaintiff must plead facts that show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul,* 733 F.Supp.2d at 1141 (citing *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litig.,* No. C–05–04726 RMW, 2008 WL 4544441, *8 (N.D.Cal. Sept. 30, 2008), and *E–Fab, Inc. v. Accountants, Inc. Services,* 153 Cal.App.4th 1308, 1319, 64 Cal.Rptr.3d 9 (2007) ("A plaintiff whose complaint shows on its face that his claim would be

---

42. *Id.*

43. VW Group Motion at 9; VW/Audi Motion at 8.

44. VW Group Motion at 24; VW/Audio Motion at 20.

45. VW Group Opp. at 19.

barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence")).

Plaintiffs assert that the delayed discovery rule applies because they could not have discovered the bases for their claims until defendants conducted oil consumption tests on the vehicles; Prasobratána never received the results of this test of his vehicle, while Lamia received the results only after the original complaint was filed.[46] Defendants challenge plaintiffs' reliance on the delayed discovery rule.[47] They argue that the owner's manuals for the class vehicles disclose that oil may have to be added between regular oil changes, and that plaintiffs were thus put on notice of the purported defect when they received the manuals.[48] Defendants also contend that plaintiffs learned or should have learned of the vehicles' allegedly excessive oil consumption the first time they had to add oil to their vehicle, or once they had driven 1,400 miles in the vehicle.[49]

Plaintiffs do not allege that defendants are liable under the CLRA simply because their vehicles required additional oil between regular oil changes, however. Nor do they allege claims based on rapid oil consumption that occurred on one occasion and necessitated the addition of oil prior to a regularly anticipated oil change. Plaintiffs allege, rather, that their vehicles have a defect that causes the engines to utilize engine oil improperly, burning it at an abnormally high rate, and leading to oil changes or the addition of oil on an unreasonably frequent basis.[50] Plaintiffs assert that the defect can cause engine failure while the vehicle is in operation "[a]t any time and under any driving condition or speeds." [51] Nothing in the complaint suggests that plaintiffs discovered or should have discovered the nature of the defect, the need for unreasonably frequent oil changes, or the possibility of engine failure upon receipt of the owner's manual, after driving 1,400 miles, or even after an initial addition of oil or an oil change.[52] To the contrary, the complaint alleges that the plaintiffs did not know of the defect, and that defendants failed to disclose it or even acknowledge its existence.[53]

The complaint pleads that Lamia took his vehicle to an authorized Audi repair facility in July 2012, complaining that he frequently had to add supplemental oil between oil changes.[54] During this visit, the dealer conducted an oil consumption test that defendant designed to diagnose the oil consumption defect.[55] On August 7,

---

46. *Id.* at 21.

47. VW Group Motion at 10.

48. VW Group Opp. at 21.

49. *Id.* The complaint alleges that Asghari had to add approximately one quart of oil every 1,300 to 1,400 miles. (FAC, ¶ 17). Defendants contend that the complaint also alleges that Lamia and Culver had to add approximately one quart of oil every 1,300 to 1,400 miles. The complaint actually pleads, however, that Lamia had to add approximately one quart of oil every 2,500 miles (FAC, ¶ 23), and that Calver had to add approximately one quart of oil every 1,600 miles. (FAC, ¶ 31.)

50. FAC, ¶¶ 5–7.

51. *Id.,* ¶ 5.

52. A dealer allegedly told Calver, for example, that an oil leak, not an engine defect, was the cause of her vehicle's high oil consumption. (See *id.,* ¶ 28.)

53. See, e.g., *id.,* ¶ 58.

54. *Id.,* ¶¶ 58–59.

55. *Id.* The complaint does not specify which defendant designed the oil consumption defect test.

2012, Lamia allegedly returned to the repair facility to complete the second phase of the oil consumption test.[56] The dealer purportedly told Lamia that his engine had consumed oil at a rate of 0.4 quarts per 1,000 miles.[57] These allegations are sufficient to show the time and manner of Lamia's alleged discovery that the engine was consuming oil at an abnormally high rate. They are also sufficient to plead Lamia's diligence in discovering the alleged defect; he took the vehicle to an authorized repair facility, and returned on two occasions to learn the results of the test. Accepting the facts alleged in the complaint as true, therefore, Lamia discovered the defect on August 7, 2012, when he learned the results of the oil consumption test.[58] Because this date is less than three years before Asghari commenced this action, the court declines to dismiss Lamia's CLRA claim as time-barred. See *Cartwright v. Viking Indus. Inc.*, 249 F.R.D. 351, 355 (E.D.Cal.2008) ("Defendant further argues that the statute of limitations is likely to have run on class claims because the Window Products were allegedly purchased years ago. However, the question of when the class should have known that their windows had failed and that such failure was a result of the Viking Window Products are factual questions which cannot be determined on a motion to dismiss under Rule 12(b)(6). Because plaintiffs have alleged why they did not discover the Window Product defects were caused by defendant until one year before the filing of this action and because the allegations of the complaint [are] read in the light most favorable to plaintiffs, defendant's motion to dismiss plaintiffs' complaint based upon the statute of limitations is DENIED").[59]

■ The complaint alleges no facts, however, concerning the time and manner of Prasobratana's discovery that the engine was consuming oil at an accelerated rate. Although plaintiffs allege that Prasobratana added supplemental oil to his vehicle between oil changes, they do not plead facts as to how or when he learned that additional oil was needed because of the purported oil consumption defect. Nor does the complaint allege any facts from which it could be inferred that Prasobratana acted diligently in attempting to discover the defect. On the basis of the present complaint, therefore, Prasobratana is not entitled to invoke the discovery rule to show that his CLRA claim is timely. Prasobratana purchased his vehicle in 2008, more than three years before plaintiffs filed their complaint. The court concludes, therefore, that Prasobratana's CLRA claim is time-barred.

### 6. Whether Calver's and Prasobratana's UCL Claims Are Time–Barred

■ The Ninth Circuit has held that UCL claims "are subject to a four-year statute of limitations which beg[i]n[s] to run on the date the cause of action accrue[s], not on the date of discovery." *Karl Storz Endoscopy–America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir.2002) (citing Cal. Bus. & Prof.Code § 17208). Unlike CLRA claims, UCL claims do not benefit from the discovery rule. See *Keegan*, 284 F.R.D. at 543–44

---

**56.** *Id.*

**57.** *Id.*

**58.** Even if the court treats the earlier date of July 2012 as the date of discovery, Lamia's claim is not time-barred.

**59.** Defendants can renew this argument if appropriate after further factual development.

("As noted, California's UCL and CLRA differ on this point, as a UCL cause of action accrues when the unfair, fraudulent or unlawful practice occurs. CLRA claims, however, receive the benefit of the discovery rule"); *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal.App.4th 884, 891, 117 Cal.Rptr.2d 331 (2002) (the discovery rule does not apply to unfair competition actions).

Defendants argue that Calver's and Prasobratana's UCL claims must be dismissed as time-barred, because their vehicles were purchased from defendants in 2008, more than four years before Asghari filed this action in May 2012.[60] Plaintiffs counter the UCL statute of limitations can be tolled by fraudulent concealment. They assert that defendants fraudulently concealed the facts underlying the UCL claim, and therefore that the limitations period on Calver's and Prasobratana's claims did not begin to run until they discovered the engine defect. Plaintiffs allege that Prasobratana purchased his vehicle in April 2008—more than four years before the initial complaint in this action was filed.[61] For the same reasons that the court dismissed his CLRA claim as time-barred, it also dismisses his UCL claim.[62]

By contrast, the facts alleged in the complaint do not show that Calver's claim accrued more than four years before this action was filed. Calver allegedly purchased her vehicle from a third party in

2011. For the reasons stated in the court's discussion of the timeliness of Calver's CLRA claim, the complaint pleads no facts indicating that the third-party seller purchased the vehicle from defendants more than four years before plaintiffs commenced this action. Consequently, the court cannot conclude that Calver's UCL claim is time-barred. See *Von Saher*, 592 F.3d at 969 ("A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.' ... 'A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim,'" citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir.1995)). Consequently, the court denies defendants' motion to dismiss Calver's UCL claim.

### 7. Whether Calver Can Claim Restitution Under the UCL

Defendants next argue that Calver cannot claim restitution under the UCL.[63] They assert that a UCL restitution claim "'requires that the plaintiff must once have had an ownership interest in the money or property *acquired* by the defendant by unlawful means.'"[64] Defendants

---

**60.** VW Group Opp. at 23–24.

**61.** See *supra*, note 50.

**62.** Although the court concludes *infra* that plaintiffs have sufficiently alleged fraudulent concealment of material information, the complaint contains no facts indicating that Prasobratana failed to discover his cause of action as a result of the alleged fraudulent concealment once it became apparent that his engine was burning excessive oil. The com-

plaint does not allege, for example, that Prasobratana did not file this action within the limitations period because defendants informed him that it was normal for his engine to burn so much oil or because the problem was associated with an oil leak.

**63.** VW/Audi Motion at 16.

**64.** *Id.* (citing *Shersher v. Super. Ct.*, 154 Cal. App.4th 1491, 1499–1500, 65 Cal.Rptr.3d 634) (2007) (emphasis added)).

contend that where, as here, Calver purchased her vehicle used from a third party, she cannot assert a UCL claim since defendants never acquired the money she paid to obtain the vehicle.[65] Plaintiffs do not respond to this argument.[66]

 Individuals' remedies under the UCL are restricted to injunctive relief and restitution. A plaintiff may recover lost money in the form of restitution under the UCL, but not damages. See *Korea Supply v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1152, 1144, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) (holding that "disgorgement of profits allegedly obtained by means of an unfair business practice" is not "an authorized remedy under the UCL where the profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest"). To show that she is entitled to restitution, a plaintiff must demonstrate that the defendant is in possession of money or property taken from her. See *Groupion, LLC v. Groupon, Inc.*, 859 F.Supp.2d 1067, 1083 (N.D.Cal.2012) (holding that restitution was unavailable because plaintiff "ha[d] not submitted any evidence or . . . argument, to show that [defendant] obtained money from [plaintiff] or that [plaintiff] otherwise ha[d] any ownership interest of any of [defendant's] profits," citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App.4th 663, 699, 38 Cal.Rptr.3d 36 (2006) (a plaintiff can seek money or property as restitution only when the "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession")); *Hill v. Opus Corp.*, 464 B.R. 361, 394 (C.D.Cal.2011) (restitution is not available where the money claimed by plaintiff cannot be "traced to any particular funds in [defendants'] possession"); *EchoStar Satellite Corp. v. NDS Group PLC*, No. SA CV03–0950 DOC, 2008 WL 4596644, *9 (C.D.Cal. Oct. 15, 2008) ("Restitution under the UCL is only available where the sum at issue can clearly be traced to particular funds or property in the defendant's possession. . . . As the Court previously recognized, NDS never directly took anything from EchoStar. . . . Simply put, it is plain that EchoStar is seeking to dress up its unsuccessful damages claim as one for restitution under the UCL. However, such relief is not available" (internal quotation marks and citations omitted)); see also *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1268, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (with restitution, "defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct").

 Plaintiffs have not alleged facts indicating that defendants obtained Calver's money or property nor that defendants are in possession of funds rightfully belonging to her. Rather, the complaint alleges that Calver bought her vehicle from a third party. The complaint thus fails to plead facts showing that Calver has a plausible claim to restitution under the

---

65. *Id.*

66. The court could conclude, therefore, that plaintiffs have abandoned Calver's claim for restitution under the UCL. See *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F.Supp.2d 1125, 1132 (C.D.Cal.2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue"); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1131 (N.D.Cal.2008) (granting a motion to dismiss a claim without leave to amend after noting that plaintiffs' opposition did not address defendants' arguments regarding the claim, and that plaintiffs had therefore abandoned the claim). Nonetheless, the court considers the merits of defendants' arguments herein.

UCL. *Id.* The court therefore dismisses her UCL claim for restitution.

## 8. Whether Plaintiffs Have Adequately Pled CLRA and UCL Claims

### a. Whether Plaintiffs' Allegations Satisfy the Heightened Pleading Requirements of Rule 9(b)

The parties agree that plaintiffs' UCL and CLRA claims "sound in fraud" because they are based on defendants' allegedly fraudulent omission and/or concealment of material information concerning the engine defect. Such claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir.2009); *In re Toyota Motor Corp.,* 754 F.Supp.2d at 1170 n. 17. Generally, a plaintiff must plead the "time, place, and specific content" of allegedly fraudulent conduct to satisfy Rule 9(b). See *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007); *Cirulli v. Hyundai Motor Co.,* No. SACV 08–0854 AG (MLGx), 2009 WL 5788762, *4 (C.D.Cal. June 12, 2009) ("Generally, a plaintiff must plead 'with particularity' the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud," citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547–49 (9th Cir.1994) (en banc); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991)). When a claim rests on allegations of fraudulent omission, however, the Rule 9(b) standard is somewhat relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Id.* (citing *Washington v. Baenziger,* 673 F.Supp. 1478, 1482 (N.D.Cal.1987)).

Nonetheless, a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity. See *Bias v. Wells Fargo & Co.,* 942 F.Supp.2d 915, 935 (N.D.Cal.2013) ("Although Plaintiffs' allegations do allege a fraud based in part on omissions, a plaintiff must still plead such claim with particularity," citing *Kearns,* 567 F.3d at 1126 ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)"); *Marolda v. Symantec Corp.,* 672 F.Supp.2d 992, 1002 (N.D.Cal.2009) ("The Ninth Circuit has recently clarified that claims of nondisclosure and omission, as varieties of misrepresentations, are subject to the pleading standards of Rule 9(b)")); see also *Eisen v. Porsche Cars North America, Inc.,* No. CV 11–9405 CAS, 2012 WL 841019, *3 (C.D.Cal. Feb. 22, 2012) ("Although claims based on an alleged fraudulent omission or concealment can succeed without the same level of specificity required by a normal fraud claim ... the contention that ... nondisclosure claims need not be pleaded with particularity is unavailing" (internal quotation marks and citations omitted)). Specifically, a plaintiff must "set forth an explanation as to why [the] omission complained of was false and misleading" to state a claim under Rule 9(b). *Bias,* 942 F.Supp.2d at 932 (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d at 1548). "[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen,*

2012 WL 841019 at *3 (citing *Marolda*, 672 F.Supp.2d at 1002).

Defendants argue that plaintiffs have failed adequately to plead a fraudulent omission that satisfies Rule 9(b).[67] They assert that plaintiffs' CLRA claims "consist[ ] of vague and conclusory allegations which merely parrot statutory language" without "set[ting] forth any of the required particulars." [68] They contend, moreover, that plaintiffs' conclusory allegations of fraudulent omission are contradicted by the owners' manuals, which purportedly disclose the many variables that affect oil consumption, and by the written warranties for plaintiffs' vehicles, which do not state that vehicles are "free from defects," but cover only repair or replacement "to correct a defect in [the] manufacturer's material and workmanship." [69]

Plaintiffs assert that their claims are sufficient under Rule 9(b).[70] They contend their allegations are adequate to show that defendants were in exclusive possession of certain facts; that defendants knew those facts but withheld them from consumers; that the facts withheld were material; and that plaintiffs relied on the absence of any defect.[71] Plaintiffs contend, therefore, that their allegations provide adequate notice to defendants of the basis for the claims.

■ The court concludes that plaintiffs have adequately alleged their fraudulent omission/concealment claims with the particularity required by Rule 9(b). Plaintiffs plead "what" was omitted and/or concealed (an engine defect that causes the engine to consume excessive oil and creates a risk of engine failure); [72] "why" the information

67. VW Group Motion at 12–14.

68. *Id.* at 11.

69. *Id.* at 13. See also FAC, ¶ 122 n. 5.

70. VW Group Opp. at 24–25.

71. *Id.*

72. FAC, ¶ 54; *id.*, ¶ 59. At the hearing, defendants argued that plaintiffs had failed to plead the nature of the defect with the particularity required by Rule 9(b) because they did not allege the mechanical cause of the defect or the measures they had employed to determine that the vehicles' rate of oil consumption is "excessive." Defendants cite no authority that indicates these specific facts must be alleged to plead an engine defect resulting in excessive consumption of oil with particularity. Plaintiffs allege that the class vehicles' engines are defective; that the defective engines are the "2.0 liter turbocharged engine" manufactured, installed, and/or distributed by Volkswagen; that the defect causes the engines to be unable properly to utilize engine oil; that the defect causes the engines to burn and/or consume abnormally high amounts of oil; that the defect causes "voluminous oil consumption that cannot be reasonably anticipated or predicted"; that the defect can cause engine failure while the vehicles are in operation, creating the risk of accidents and injury; that the rate of oil consumption for some class vehicles can be as high as one quart of oil per 500 miles driven; that the defect requires the addition of substantial amounts of oil between scheduled oil changes; and that the defect can cause engine damage. (*Id.*, ¶¶ 3–8.) Plaintiffs elaborate on these general allegations in their individual allegations. The complaint asserts that Asghari's vehicle consumed 0.76 quarters per 1,000 miles driven, and that major engine repairs were required to fix the defect, i.e., the removal and replacement of the engine's piston rings. (*Id.*, ¶ 17.) Similarly, the complaint alleges that an Audi dealer told Lamia that his vehicle's engine consumed oil at a rate of 0.4 quarters per 1,000 miles, and that his engine needed to have its piston rings replaced to fix the problem. (*Id.*, ¶ 23.) The complaint pleads that Calver's vehicle consumed 0.63 quarts of oil per 1,000 miles, and that the dealer addressed the oil consumption issue by cleaning the pistons and installing four new piston rings in the engine. (*Id.*, ¶ 31.) The complaint also quotes numerous consumer complaints concerning the oil consumption defect. (*Id.*, ¶ 57.) The court finds that these allegations, taken together, sufficient to identify the purported defect with the particularity required by Rule 9(b).

was not disclosed (to sell the class vehicles at a premium price and also to mislead owners during the limited warranty period in order to avoid having to fulfill their contractual obligations under the warranty)[73] and "how" defendants allegedly concealed the information (by denying that there was a known oil consumption problem and asserting that abnormally high consumption was normal upon receiving a complaint).[74] Plaintiffs also allege how and when defendants became aware of the purported defect; they maintain that, prior to 2007, defendants were in possession of pre-release testing data, aggregate data from dealers, and early consumer complaints about the oil consumption defect.[75] Plaintiffs contend that defendants failed to recall the class vehicles despite receiving numerous complaints about the defect.[76] They thus adequately plead the particulars of defendants' allegedly fraudulent omissions. *In re Toyota Motor Corp.*, 754 F.Supp.2d at 1190–91 (finding that plaintiffs had sufficiently pled fraudulent concealment when they alleged "the 'what' (concealment of [a sudden unintended acceleration defect] ...), the 'why' (to induce customers to purchase Toyota cars at the prices sold ...), and the 'how' (instead of telling consumers about SUA problems, the problems were concealed so that Toyota's business would not be disrupted by NHTSA investigations and/or recalls and ... negative publicity)"); *Ehrlich v. BMW of North America, LLC*, 801 F.Supp.2d 908 (C.D.Cal.2010) (denying a motion to dismiss CLRA, UCL, and fraudulent concealment claims where plaintiff pled with particularity how the design was defective, how BMW discovered the defect, the steps BMW took to conceal the defect, and the fact that the defect posed an injury risk to a driver's head and neck); see also *Falk,*

---

73. *Id.,* ¶ 110.

74. *Id.,* ¶ 58; *id.,* ¶ 101. Although defendants argue that the class vehicles' rate of oil consumption was disclosed in the owners' manuals for the vehicles, plaintiffs argue that they did not receive the manuals until after they had purchased the vehicles. (Plaintiffs' Evidentiary Objections to Defendant Volkswagen Group of America, Inc.'s References to Owner's Manuals, Docket No. 34 (Nov. 6, 2012).) The complaint does not allege that plaintiffs received owners' manuals from defendants or otherwise had access to them prior to purchasing their vehicles. Defendants, moreover, do not contend that the owner's manuals state that the class vehicles have a high rate of oil consumption *due to an engine defect.* The owners manuals do not, therefore, disprove plaintiffs' allegations that defendants omitted and/or concealed information about the oil consumption defect prior to plaintiffs' purchases of their vehicles. See *Tait v. BSH Home Appliances Corp.*, No. SACV 10–00711 DOC, 2011 WL 3941387, *2–3 (C.D.Cal. Aug. 31, 2011) ("Plaintiffs aver that Defendant, both from first-hand experience and consumer complaints, knew of the machines' defects, ... but actively concealed this information by failing to disclose it to consumers prior to the time of purchase. Defendant's attempt to rebut this allegation by arguing that Defendant provided information on the extra efforts needed to clean the machines in its Use and Care Manual, or that complaints about the product were available on the internet, is unavailing. The Use and Care Manuals were available to consumers only after they bought the machines. Similarly, the fact that information about consumer complaints may have been available on the internet does not negate a claim for fraudulent omission.... [A]lthough some 'prospective purchasers with access to the internet could have read the many complaints about [the product,] ... [Defendant] is alleged to have known a lot more.... Many customers would not have performed an internet search before beginning a [product] search. Nor were they required to do so.' *Falk,* 496 F.Supp.2d at 1096. Plaintiffs have adequately [pled] a duty to disclose").

75. *Id.,* ¶ 55; see also *id.,* ¶ 57 (consumer complaints filed with the NHTSA and posted on the Internet); *id.,* ¶ 59 ("customers have reported the oil consumption defect in the Class Vehicles to Volkswagen directly and through its dealers").

76. *Id.* ¶ 61.

496 F.Supp.2d at 1097 ("Plaintiffs support their active concealment claim with several different factual allegations. First, the fact that various GM customers complained between 2003 and 2007 yet GM never made any attempt to notify other customers or effect a recall, suggests that GM may have attempted to actively conceal the alleged defect in their speedometers. Plaintiffs also argue that '[w]here GM replaced the Trucks' speedometers pursuant to warranty provisions, GM utilized equally defective speedometers and speedometer mechanisms such that the defect was not corrected even though GM informed consumers that it was.' This claim suggests that GM tried to gloss over the problems with its speedometers by replacing broken ones with the exact same model of speedometer, thereby giving the impression that any defects were unique cases. This might very well constitute active concealment of a systematic problem"). As in these cases, plaintiffs' allegations of fraudulent omission and concealment here are sufficiently particular to satisfy Rule 9(b). Consequently, the court denies defendants' motion to dismiss plaintiffs' CLRA and UCL claims for failure to satisfy Rule 9(b)'s heightened pleading standard.[77]

### b. Whether Plaintiffs Have Alleged a Duty to Disclose

Defendants assert that omissions are actionable under the CLRA and the UCL only when the omission is either contrary to a representation made by defendant or where a duty to disclose exists.[78] They argue that plaintiffs have failed to allege facts that would indicate defendants had a duty to disclose the purported defect.[79]

"Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Smith v. Ford Motor Co.*, 749 F.Supp.2d 980, 987 (N.D.Cal.2010) (citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337, 60 Cal.Rptr.2d 539 (1997)); see also *Cirulli*, 2009 WL 5788762 at *3 ("In *Falk*, the Northern District of California found that concealment or a failure to disclose can constitute actionable fraud under the CLRA in four situations: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but

---

**77.** At the hearing, defendants argued that the cases cited by the court are inapposite because in those cases, the class vehicles had a "demonstrable malfunction," e.g., tire wear or blowout. The court disagrees. Some plaintiffs allege that they had to have the piston rings in their vehicles replaced; this gives rise to an inference that there may well have been a physical manifestation of the effects of the allegedly excessive oil consumption. In any event, it is clear that a latent defect can support a CLRA claim under certain circumstances. See *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1141 (9th Cir.

2012) ("*Daugherty* held that a manufacturer is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose,'" quoting *Daugherty*, 144 Cal.App.4th at 835, 51 Cal.Rptr.3d 118).

**78.** *Id.*

**79.** VW Group Motion at 13–14.

also suppresses some material fact," citing *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1095 (N.D.Cal.2007) (quoting *LiMandri*, 52 Cal.App.4th at 327, 60 Cal.Rptr.2d 539)). Under this standard, absent a fiduciary relationship between the parties, the facts the defendant knows and conceals must be material. See, e.g., *Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 970–71 (N.D.Cal.2008) (citing the *LiMandri* factors and stating that "[t]he first condition is not in issue here. [A]ll of the other situations require materiality"), aff'd, 322 Fed.Appx. 489 (9th Cir.2009) (Unpub. Disp.).

■ "[I]n order for non-disclosed information to be material, a plaintiff must show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Oestreicher*, 544 F.Supp.2d at 971 (quoting *Falk*, 496 F.Supp.2d at 1095, in turn quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993)). As noted, "[m]ateriality ... is judged by the effect on a 'reasonable consumer.'" *Id.* (citing *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1360, 8 Cal.Rptr.3d 22 (2003)).

■ Plaintiffs base their UCL and CLRA claims on defendants' allegedly knowing and intentional failure to disclose the engine defect to them and other putative class members. They contend defen-

dants had a duty to disclose because they knew material facts concerning the defect that they actively concealed. Under California law, and as recently described by the Ninth Circuit, "'[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.'" *Id.* at 987–88 (citing *Oestreicher*, 322 Fed. Appx. at 493 (affirming the dismissal of CLRA, UCL and fraudulent concealment claims because plaintiff failed to allege that defendant had "affirmatively misrepresented its products" or that the alleged defect "posed a threat to his own safety or the safety of others'")); *O'Shea v. Epson America, Inc.*, No. CV 09–8063 PSG (CWx), 2011 WL 3299936, *8 (C.D.Cal. July 29, 2011) ("[T]he weight of authority suggests that a "manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue," quoting *Oestreicher*, 322 Fed.Appx. at 493). See also *Smith*, 749 F.Supp.2d at 987 ("The California Court of Appeal has held that a manufacturer cannot be found liable under the CLRA for failure to disclose a defect that manifests itself after expiration of the warranty period unless such omission (1) is 'contrary to a representation actually made by the defendant' or (2) pertains to a 'fact the defendant was obligated to disclose,'" quoting *Daugherty*, 144 Cal.App.4th at 835–36, 51 Cal.Rptr.3d 118).[80] The court

---

80. "[T]he rule set forth in *Daugherty* is consistent with the general policy stated by the California Supreme Court that although '[a] consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market,' the consumer nevertheless 'can ... be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.'" *Id.* (citing *Seely v. White Motor Co.*, 63 Cal.2d 9, 18, 45 Cal.Rptr. 17, 403 P.2d 145 (1965)). See also *Wilson v. Hewlett–Packard Co.*, No. C–09–2253 RMW, 2009 WL 3021240, *1

(N.D.Cal. Sept. 17, 2009) (dismissing a CLRA claim based on a manufacturer's alleged duty to disclose where the omission did not implicate safety concerns); *Berenblat v. Apple, Inc.*, Nos. 08–4969 JF (PVT), 09–1649 JF (PVT), 2009 WL 2591366, *5–7 (N.D.Cal. Aug. 21, 2009) (dismissing claims based on an allegedly defective computer component, because "[t]he failure to disclose a defect that might, or might not, shorten the effective life span of [a product] that functions precisely as warranted throughout the term of the express warranty" is not actionable); *Morgan v. Har-*

need not determine whether defendants' warranty obligations required them to take steps to correct the purported oil consumption defect because it concludes that plaintiffs have adequately alleged that the information purportedly concealed by defendants pertained to a safety issue.

■ Plaintiffs allege that the engine's inability to utilize oil properly can cause engine failure to occur at any time, under any driving condition, and at any speed, creating a serious risk of injury.[81] They allege that defendants concealed the defect from consumers by failing to disclose its existence, by denying that the defect was a known problem, and by asserting that the vehicles' consumption of high amounts of oil was normal when they received a complaint.[82] Plaintiffs thus allege that defendants concealed facts relating to an unreasonable safety risk that would have been material to the reasonable consumer. See *Cholakyan v. Mercedes–Benz USA, LLC,* 796 F.Supp.2d 1220, 1238 (C.D.Cal.2011) ("Cholakyan has not alleged that the water leak defect caused engine stalling; rather, he asserts it causes sudden and unexpected engine failure that could result in personal injury or death. It is not implausible that the 'electrical faults' described in the TSB could give rise to the safety concerns alleged in the complaint.... Because Cholakyan has adequately alleged a safety defect, he has sufficiently pled a material failure to disclose for purposes of the UCL and CLRA"); *Marsikian v. Mercedes Benz USA, LLC,* No. CV 08–4876 AHM (JTLx), 2009 WL 8379784, *6, 2009 U.S. Dist. LEXIS 117012, *16–17 (C.D.Cal. May 4, 2009) (denying a motion to dismiss a CLRA claim where plaintiff alleged that Mercedes–Benz air intake systems were "susceptible to clogging" and that the defect could lead to "substantial electrical failure," because "it is not implausible that the [clogging] would cause 'catastrophic engine and electrical system failure' while the car is on the road").[83] Because plaintiffs have adequately alleged a safety defect, they have sufficiently pled a material breach of the duty to disclose for purposes

*monix Music Systems, Inc.,* No. C08–5211 BZ, 2009 WL 2031765, *4 (N.D.Cal. July 7, 2009) (dismissing claims based on allegedly defective video game drum pedals because "[a]ccording to all of the relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use"); *Hoey v. Sony Electronics, Inc.,* 515 F.Supp.2d 1099, 1105 (N.D.Cal. 2007) ("There is no authority that provides that the mere sale of a consumer electronics product in California can create a duty to disclose any defect that may occur during the useful life of the product").

81. *Id.,* ¶ 3.

82. *Id.,* ¶ 58; *id.,* ¶ 101.

83. See also *Ehrlich,* 801 F.Supp.2d at 918 ("Plaintiff has sufficiently alleged that the defective windshields in the MINIs create an unreasonable safety risk that would be material to a reasonable consumer. Plaintiff alleges that each MINI's windshield is part of the vehicle's safety restraint system and if a MINI with a cracked windshield is in a roll-over accident, the windshield can become dislodged, compromising roof-crush resistance and causing serious head and neck injuries, failure of the passenger side airbag to deploy, or the ejection of passengers from the vehicle. The alleged unreasonable risk of safety created by compromised windshields during roll-over accidents is relevant to the materiality of BMW's omissions, and Plaintiff has alleged a plausible unreasonable safety risk that would have been material to the reasonable consumer.... Thus, the Court finds that Plaintiff has sufficiently alleged a duty to disclose the cracking defect and BMW's motion to dismiss Plaintiff's fraud-based CLRA and UCL claims on this ground is DENIED"); *Falk,* 496 F.Supp.2d at 1096 ("[P]laintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard: ... the risk of inadvertent speeding, driving at unsafe speeds, and accidents").

of the UCL and CLRA. The court therefore denies defendants' motion to dismiss the claims on this basis.

### 9. Whether Plaintiffs Have Standing to Pursue a UCL Claim

■ To have standing to bring a claim under the UCL, a plaintiff must show that she "has suffered injury in fact and has lost money or property as a result of" defendant's violation of the statute. *Pom Wonderful LLC v. Coca–Cola Co.*, 679 F.3d 1170, 1179 (9th Cir.2012). A plaintiff need only allege that she suffered a concrete financial loss to demonstrate actual injury-in-fact. *Cholakyan*, 796 F.Supp.2d at 1230; see also *Steele v. Hospital Corp. of America*, 36 F.3d 69, 71 (9th Cir.1994) (allegations of a "concrete financial loss" suffice to confer standing); *Sanchez v. Wal–Mart Stores, Inc.*, No. 2:06–CV–2573 JAM KJM, 2008 WL 3272101, *3 (E.D.Cal. Aug. 6, 2008) ("To have standing under the UCL Sanchez need only demonstrate that she spent or lost money due to an unfair business practice. Direct victims of an unfair business practice may obtain an order of restitution to recover money lost from an unfair practice as well as injunctive relief. Through this action, Sanchez seeks an order of restitution to recover money lost from having to replace an allegedly defective stroller that she purchased from Wal–Mart due to an unfair business practice.... This is minimally sufficient to confer standing to assert a claim for relief under the UCL").

■ Defendants argue that plaintiffs fail to allege injury-in-fact resulting from their allegedly fraudulent concealment of the oil consumption defect.[84] Plaintiffs plead, however, that they suffered concrete financial injuries in the form of repair costs,[85] money paid for diagnostic tests,[86] and out-of-pocket expenses for frequent additions of oil.[87] Since plaintiffs allegedly incurred concrete financial losses in the form of ascertainable out-of-pocket damages, the court concludes that they have demonstrated injury-in-fact under the UCL. See *Cholakyan*, 796 F.Supp.2d at 1229–31; see also *In re Toyota Motor Corp.*, 754 F.Supp.2d at 1161 ("Standing merely requires a redressable injury that is fairly traceable to Defendants' conduct. Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question. Here, Plaintiffs allege economic loss injuries, which may or may not be recoverable under Plaintiffs' claims in the MCC. These alleged economic injuries are sufficient").

### C. Whether Asghari States a Claim under § 349 of New York's General Business Law

■ New York General Business Law ("GBL") § 349 creates a private cause of action for any person injured by "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. N.Y. Gen. Bus. Law § 349. To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.2009); *Bosch v. LaMattina*, 901 F.Supp.2d 394, 406 (E.D.N.Y.2012). To be consumer-oriented, the conduct must have a "broad impact on consumers at large."

---

84. VW/Audi Motion at 18–19; VW Group Motion at 16.

85. FAC, ¶ 31.

86. *Id.,* ¶ 29.

87. *Id.,* ¶ 14; *id.,* ¶ 20; *id.,* ¶ 26; *id.,* ¶ 35.

*U.W. Marx, Inc. v. Bonded Concrete, Inc.,* 7 A.D.3d 856, 776 N.Y.S.2d 617, 619 (2004).

Defendants argue that Asghari's GBL § 349 claim must be dismissed because he fails to allege any fraudulent omission or concealment.[88] Specifically, defendants contend that they disclosed in the Owner's Manual that the engine could consume oil at a rate as high as 1/2 quart per every 600 miles, and that the consumer might need to add oil in between oil changes.[89] Asghari counters that defendants' failure to disclose the alleged engine defect was a material omission and that had the defect been disclosed, consumers would have considered it in deciding whether to purchase and/or pay the price defendants sought for the class vehicles.[90] The court finds these allegations of fraudulent omission and concealment sufficient to support Asghari's GBL claim for the same reasons that it found them sufficient to support plaintiffs' California consumer protection claims. As noted, the complaint adequately alleges that defendants fraudulently failed to disclose and/or omitted material information about an engine defect that: (1) prevents the engine from using oil properly; (2) requires unreasonably frequent additions of oil; and (3) creates a risk of unexpected engine failure.

Defendants also contend that Asghari has not adequately alleged that he was injured by their alleged failure to disclose the oil consumption defect.[91] Citing *Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999), they assert that plaintiffs' allegations of injury resulting from defendants'

misleading acts "are ... speculative and not recoverable."[92]

In *Small,* the New York Court of Appeals held that plaintiffs had not adequately alleged a cognizable injury under the GBL, where they asserted that defendants' failure to disclose facts relating to the addictive properties of nicotine prevented them from making free and informed choices as consumers. *Id.* Plaintiffs alleged that had they known that nicotine was addictive, they never would have purchased cigarettes. Plaintiffs did not, however, allege that the cost of cigarettes was affected by the alleged misrepresentations, nor did they seek recovery for injury to their health as a result of their addiction. The court rejected plaintiffs' assertion that a "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349" absent a "manifestation of either pecuniary or 'actual' harm." *Id.*

 *Small* does not require dismissal of Asghari's GBL claim because he has alleged actual, pecuniary harm. As noted in the court's discussion of plaintiffs' standing to assert UCL claims, the complaint alleges that Asghari suffered concrete financial injuries in the form of out-of-pocket expenses for frequent additions of oil to his vehicle.[93] The complaint also alleges generally that plaintiffs expended money for repairs on their vehicles related to the oil consumption defect.[94] Although Asghari does not allege a specific amount of out-of-pocket expenses that he paid for repairs, he does allege that the dealer

---

**88.** VW Group Motion at 17.

**89.** *Id.* at 18.

**90.** VW Group Opp. at 29–30.

**91.** *Id.*

**92.** *Id.* at 18–19.

**93.** *Id.,* ¶ 14.

**94.** *Id.,* ¶ 60.

performed "major engine repairs" on his vehicle, removing and replacing the engine's piston rings, in order to address the defect.[95] Such repair costs would also constitute cognizable injury under the GBL. The court concludes, therefore, that the complaint alleges injuries sufficient to support Asghari's GBL claim.

### D. Plaintiffs' Breach of Warranty Claims

In addition to state consumer protection claims, plaintiffs plead various breach of warranty claims. They asserts claims for breach of express warranty under the California U.C.C. and the New York U.C.C.; breach of warranty under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.;* and breach of implied warranty under the Song–Beverly Consumer Warranty Act. The court addresses each of these claims in turn.

### 1. Breach of Express Warranty

### a. Breach of Express Warranty Under the California U.C.C.

California Commercial Code § 2313, which defines express warranty, applies to "transactions in goods." See CAL. COM. CODE § 2102; see also CAL. CIV.CODE § 1791.2(a)(1) (defining an "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance"); BLACK'S LAW DICTIONARY at 1582 (7th ed.1999) (defining "express warranty" as "[a] warranty created by the overt words or actions of the *seller*"); 3 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, §§ 55–56 (9th ed.1990); Richard A. Lord, WILLISTON ON CONTRACTS 4TH

§ 52.45 (4th ed.2004) ("Under the [Uniform Commercial] Code, an express warranty is usually associated with a contract for the sale of goods, but may be found in connection with other transactions involving goods.... There is a division of opinion whether the express warranty concepts in the Code are also applicable or may be extended to service agreements").

■ An express warranty is a term of the parties' contract. See *A.A. Baxter Corp. v. Colt Industries, Inc.,* 10 Cal. App.3d 144, 153, 88 Cal.Rptr. 842 (1970) ("A warranty is as much one of the elements of sale and as much a part of the contract of sale as any other portion of the contract and is not a mere collateral undertaking.... [T]o constitute an express warranty, the statement must be a part of the contract"); Richard A. Lord, WILLISTON ON CONTRACTS 4TH § 52.45 (4th ed.2004) (stating that an express warranty is "a term of the parties' contract"); see *Paularena v. Superior Court of San Diego County,* 231 Cal.App.2d 906, 915, 42 Cal. Rptr. 366 (1965) ("The damages which each set of plaintiffs seek[s] through their [breach of warranty] cause[ ] of action are dependent upon their affirmance of the existence of a contract").

■ To prevail on a breach of express warranty claim, a plaintiff must prove that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Rodarte v. Philip Morris, Inc.,* No. 03–0353FMC, 2003 WL 23341208, *7 (C.D.Cal. June 23, 2003). A description of the goods at issue can create an express warranty so long as it was part of the basis

---

95. *Id.,* ¶ 17.

of the parties' bargain. See CAL. COM.CODE § 2313(1)(b).

Defendants posit several reasons why plaintiffs' breach of express warranty under the California Commercial Code § 2313 should be dismissed: (1) that plaintiffs fail adequately to plead facts showing that they relied on the warranty in acquiring their vehicles; (2) that plaintiffs fail to allege that the warranty contained any representation regarding the vehicle's oil consumption that (a) could give rise to breach of warranty claim and (b) was relied on by any plaintiff; (3) that the disclosures in the Owner's Manual, specifying the need for the addition of oil between oil changes, precludes a breach of express warranty claim; (4) that the express warranty covers only "repair or replacement to correct a defect in [the] manufacturer's material and workmanship"; and (5) that plaintiffs have not incurred any out-of-pocket expenses for repairs to their vehicles.[96]

 Plaintiffs contend their California breach of express warranty claim is sufficiently pled.[97] They do not argue, however, that they have alleged reliance on the express warranty.[98] Citing *Weinstat v. Dentsply Intern., Inc.,* 180 Cal.App.4th 1213, 103 Cal.Rptr.3d 614 (2010), they argue instead that under California law, "breach of express warranty arises in the context of contract formation in which reliance plays no role."[99] In *Weinstat,* the court reversed a "lower court ruling [that] rest[ed] on the incorrect legal assumption that a breach of express warranty claim requires proof of prior reliance." *Id.* at 1227, 103 Cal.Rptr.3d 614. It stated: "While the tort of fraud turns on inducement ... breach of express warranty

arises in the context of contract formation in which reliance plays no role." *Id.; see also Keith v. Buchanan,* 173 Cal.App.3d 13, 21, 220 Cal.Rptr. 392 (1985). Weinstat alleged an express warranty claim against the product seller, however. The claim was therefore based on privity of contract. *Id.* As explained by another district court in the Ninth Circuit,

"[n]one of the authorities Plaintiff cites in her opposition support[s] the erroneous proposition that reliance is not required in an express warranty action not founded on privity.... In [*Weinstat*] the purchasers of dental equipment sued the seller, and the express warranty claim was based on privity. Similarly, in *Keith [v. Buchanan,* 173 Cal.App.3d 13, 220 Cal.Rptr. 392 (1985),] the purchaser of a boat sued the company that sold him the boat and allegedly made express warranties antecedent to the transaction. Neither *Weinstat* nor *Keith* supports Plaintiff's erroneous contention that reliance is not required where privity is absent." *Coleman v. Boston Scientific Corp.,* 1:10–CV–01968, 2011 WL 3813173, *4 (E.D.Cal. Aug. 29, 2011).

See also *id.* at *5 (stating that "reliance (or some other substitute for privity) is required for an express warranty claim against a non-selling manufacturer of a product"). When there is no privity of contract, California law requires a showing that a plaintiff relied on an alleged warranty. *Keegan,* 284 F.R.D. at 546.

 Here, none of the plaintiffs purchased his or her vehicle directly from the manufacturer. Therefore, none was in privity with defendants. See *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1023 (9th Cir.2008) ("A buyer and seller

**96.** VW Group Motion at 19–21.

**97.** VW Group Opp. at 25–27.

**98.** See *id.*

**99.** *Id.*

stand in privity if they are in adjoining links of the distribution chain. Thus, an end consumer such as Clemens who buys from a retailer is not in privity with a manufacturer"); *Yu–Santos v. Ford Motor Co.*, No. 1:06–CV–01773–AWI, 2009 WL 1392085, *21 (E.D.Cal. May 14, 2009) ("Here, it is undisputed that Plaintiff did not purchase the seat belts directly from TRW VSSI nor did she purchase her vehicle from Defendant. Thus, the chain of distribution was Defendant to Ford, Ford to car dealer and car dealer to Plaintiff. Plaintiff and Defendant do not occupy adjoining links in this chain as they are separated by at least two links.... Accordingly, there appears to be insufficient privity for Plaintiff's warranty claims"); see also *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1082 (N.D.Cal.2011) ("A buyer and seller stand in privity only if they are in adjoining links of the distribution chain; an end consumer who buys products from a retailer is not in privity with the manufacturer of the products"). Cf. *Corson v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 12–08499 JGB (VBKx), 2013 WL 1802709, *9–10 (C.D.Cal. Apr. 24, 2013) (under New York law, plaintiffs who purchased vehicles from authorized dealerships were not in privity with manufacturers, even though they were intended third party-beneficiaries of the contract between defendants and the authorized dealerships).

The complaint does not allege that any plaintiff relied on the express warranty in deciding to purchase his or her vehicle. Consequently, the court concludes that plaintiffs have failed to state a claim for breach of express warranty under California law. See *Coleman*, 2011 WL 3813173 at *4; *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 988 (N.D.Cal.2009) (dismissing an express warranty claim, where the only named plaintiff with standing to sue failed to allege reasonable reliance);

*Stearns v. Select Comfort Retail Corp.*, No. 08–2746 JF, 2008 WL 4542967, *5 (N.D.Cal. Oct. 1, 2008) ("Stearns' claim for breach of express warranty fails because she does not allege reasonable reliance under the second element on the terms of the warranty"); *Moncada v. Allstate Ins. Co.*, 471 F.Supp.2d 987, 997 (N.D.Cal.2006) (dismissing a breach of express warranty claim where plaintiffs did not allege reliance on express warranties); see also *In re Hydroxycut Marketing and Sales Practices Litig.*, 801 F.Supp.2d 993, 1013 (S.D.Cal.2011) ("Because the FAC fails to allege facts showing that ... the Retailer Defendants ... made ... representations regarding the Products that Plaintiffs relied on in purchasing the Products, the Court dismisses the ... express warranty claim ... as to the Retailer Defendants"); *Kearney v. Hyundai Motor Am.*, No. SACV09–1298–JST, 2010 WL 8251077, *9 (C.D.Cal. Dec. 17, 2010) ("Plaintiffs fail to allege that these specific statements were the express warranties that they relied on in purchasing their vehicles.... To the extent that Plaintiffs base their express warranty claim on paragraph 130 of the Second Amended Complaint, the claim is dismissed"). Consequently, plaintiffs' California Commercial Code § 2313 claim must be dismissed.

### b. Breach of Express Warranty Under the New York U.C.C.

■■■■ Section 2–313 of the New York's U.C.C. governs express warranties. Under this section,

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." N.Y. U.C.C. § 2–313(1).

An express warranty is thus "an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Horowitz v. Stryker Corp.*, 613 F.Supp.2d 271, 286 (E.D.N.Y.2009). To demonstrate that an express warranty has been given under New York law, a plaintiff "must prove that the statement falls within the definition of a warranty, that she relied on it, and that it became part of the basis for the bargain." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F.Supp.2d 464, 473 (S.D.N.Y.2010); *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 92 (N.D.N.Y.2000) ("[A]n action for breach of express warranty requires both the existence of an express promise or representation and reliance on that promise or representation. Plaintiff must also show that the 'representation became part of the 'basis of the bargain' ").

Defendants argue that Asghari's breach of express warranty claim under the New York U.C.C. fails for the same reasons their breach of express warranty under California Commercial Code § 2313 fails.[100] Although Asghari asserts that his New York express warranty claim is adequately pled for the same reasons that plaintiffs' California express warranty claim is sufficient,[101] *i.e.*, because he need not plead

reliance, the case law cited above belies this. Because the complaint does not allege that Asghari relied on the express warranty, he fails to state a claim for breach of express warranty under New York law. *Corson*, 2013 WL 1802709 at *9; see also *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 708 F.2d 385, 391 (9th Cir.1983) ("[B]ecause [plaintiff] relied on the specifications [given by defendant] when ordering the terminals, [defendant's] statement constituted an express warranty" under New York law).

### 2. Breach of Implied Warranty under the Song–Beverly Act

#### a. Legal Standard under the Song–Beverly Act

The Song–Beverly Consumer Warranty Act ("Song–Beverly Act") was enacted to regulate warranties and strengthen consumer remedies for breaches of warranty. *National R.V., Inc. v. Foreman*, 34 Cal. App.4th 1072, 1077, 40 Cal.Rptr.2d 672 (1995). The act is intended to protect purchasers of "consumer goods," defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." CAL. CIV.CODE § 1791(a). Unless specific disclaimer methods are followed, an implied warranty of merchantability accompanies every retail sale of consumer goods in the state. CAL. CIV.CODE § 1792; see also *Music Acceptance Corp. v. Lofing*, 32 Cal.App.4th 610, 619, 39 Cal.Rptr.2d 159 (1995).

 As defined in the Song–Beverly Act, an implied warranty of merchantability guarantees that "consumer goods meet

---

**100.** VW Group Motion at 21–22.

**101.** Plaintiffs argue that New York, like California, does not require reliance to recover for breach of express warranty claims.

each of the following: (1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; [and] (4) Conform to the promises or affirmations of fact made on the container or label." CAL. CIV.CODE § 1791.1(a). "Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law.... [I]t provides for a minimum level of quality." *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1295–96, 44 Cal.Rptr.2d 526 (1995).

### b. Whether Asghari States a Claim under the Song–Beverly Act

Defendants argue that Asghari cannot assert a claim under the Song–Beverly Act because he purchased his vehicle in New York.[102] They assert that the Song–Beverly Act is a California consumer statute that applies to retail sales of consumer goods in California.[103] Plaintiffs do not dispute defendants' contention that Asghari is precluded from asserting a claim under the Song–Beverly Act,[104] and concede it applies only to vehicles that were purchased in California.[105] Consequently, and in light of Asghari's withdrawal of his California law claims, the court dismisses Asghari's Song–Beverly Act claim.

### c. Whether Calver's and Prasobratana's Song–Beverly Act Claims Are Time–Barred

Defendants argue that the Song–Beverly claims of Calver and Prasobratana are time-barred.[106] They assert that the claims accrued more than four years before the commencement of this action in May 2012.[107] Plaintiffs counter that the claims are timely.[108] They contend: (1) Calver's Song–Beverly Act claim accrued in 2011, not 2008, as defendants claim; (2) the statute of limitations was tolled in February 2012, when the *Kim* complaint was filed; and (3) even if the statute was not tolled in February 2012, the limitations period on a breach of warranty claim does not begin to run until the discovery of its breach or the expiration of the four-year or 50,0000–mile express warranty.[109]

Like UCL claims, Song–Beverly Act claims are subject to a four-year statute of limitations. *Horne v. Harley–Davidson, Inc.*, 660 F.Supp.2d 1152, 1157 (C.D.Cal. 2009) (citing *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal.App.3d 205, 215, 285 Cal.Rptr. 717 (1991) (citing CAL. COM.CODE § 2725)). The court concludes that Prasobratana's Song–Beverly Act claim is untimely for the reasons stated in the court's discussion of the timeliness of his CLRA and UCL claims. The court will not dismiss Calver's claim as untimely, however, for the same reasons it declines to dismiss her CLRA and UCL claims on limitations grounds.[110]

---

102. VW/Audi Motion at 20.

103. *Id.*

104. VW Group Opp. at 27, n. 32.

105. *Id.*

106. VW Group Opp. at 20–21.

107. *Id.* See supra note 39.

108. VW Group Opp. at 28–29.

109. *Id.*

110. At the hearing, defendants asserted that Calver's Song–Beverly Act claim accrued on the date defendants sold the product under the California Commercial Code. They contended, therefore, that the statute of limitations began to run on Calver's Song–Beverly Act claim in 2008. Defendants did not cite any particular section of the Commercial Code at the hearing. Their briefs, however, reference Commercial Code § 2725, which the court cites above. Section 2725 provides

#### d. Whether Plaintiffs State a Claim for Breach of Implied Warranty

Defendants argue that plaintiffs do not properly plead a breach of an implied warranty of merchantability.[111] They assert that "[t]he FAC states no facts demonstrating that the alleged oil consumption of Plaintiffs' vehicles w[as] excessive; why and against what purported standard [it is] alleged to be excessive; and why the need to add oil in accordance with the Owner's Manuel renders their vehicles unfit for the purpose of 'providing ... reliable, durable and safe transportation.' "[112]

■■■ A plaintiff claiming breach of an implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406, 7 Cal. Rptr.3d 546 (2003) (citing CAL. COMM.CODE § 2314(2)); see also *Pisano v. American Leasing*, 146 Cal.App.3d 194, 198, 194 Cal. Rptr. 77 (1983) ("Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade"). The implied warranty of merchantability set forth in § 1791.1(a) requires only that a vehicle be reasonably suited for ordinary use, however. Stated differently, it need not be perfect in every detail so long as it "provides for a minimum level of quality." *American Suzuki*, 37 Cal.App.4th at 1296, 44 Cal.Rptr.2d 526 (quoting *Skelton v. General Motors Corp.*,

500 F.Supp. 1181, 1191 (N.D.Ill.), rev'd. on other grounds, 660 F.2d 311 (7th Cir. 1981)). The basic inquiry, therefore, is whether the vehicle was fit for driving. See *Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir.1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable"), cert. denied, 495 U.S. 904, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990); *Skelton*, 500 F.Supp. at 1191 ("Automobiles are designed for driving, and therefore the question in this case is whether the GM vehicles at issue were fit for that purpose"); *American Suzuki*, 37 Cal.App.4th at 1296, 44 Cal.Rptr.2d 526 ("Courts in other jurisdictions have held that in the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation").

■■■ Whether a car provides a "minimum level of quality" is not determined by the manner in which it is operating at the time of sale. A vehicle that operates for some time after purchase may still be deemed "unfit for ordinary purposes" if its components are so defective

---

that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." CAL. COM.CODE § 2725(a). It also provides that "[a] breach of warranty occurs when tender of delivery is made." *Id.*, § 2725(c). Section 2725 does not specify, however, whether "tender of delivery" of a re-sold product occurs when the manufacturer first tenders delivery of the product, or when "tender of delivery" is made to plaintiff. Defendants cite no case law that provides the answer to this question. Whichever may be true, for reasons stated

*supra* in discussing the timeliness of Calver's CLRA and UCL claims, the court cannot determine when Calver's vehicle was originally purchased from the dealer and/or sold by defendants based on the allegations of the complaint. Consequently, it cannot dismiss Calver's Song–Beverly Act claim as untimely at this time.

**111.** *Id.* at 21.

**112.** *Id.*

that the vehicle becomes inoperable within an unacceptably short period of time. See, e.g., *Hornberger v. General Motors Corp.,* 929 F.Supp. 884, 888 (E.D.Pa.1996) ("[A] material question of fact does exist as to whether a normal transmission of a newly leased vehicle would fail after being driven approximately 40,000 miles, rendering the car unfit for the purpose of driving and, therefore, unmerchantable"). Thus, the " 'implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale,' so '[i]n the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery.' " *Ehrlich,* 801 F.Supp.2d at 922 (quoting *Mexia v. Rinker Boat Co.,* 174 Cal.App.4th 1297, 1305–06, 95 Cal.Rptr.3d 285 (2009)).

 The complaint contains various allegations that, accepted as true, state a implied warranty of merchantability claim. Specifically, as noted, the complaint alleges that the engine is unable to properly utilize the engine oil, resulting in consumption of "abnormally high amounts of oil." [113] Plaintiffs allege that the defect thus creates a safety risk, because it can cause engine failure while the vehicle is in operation, at any time, under any driving condition, and at any speed.[114] Although defendants argue that plaintiffs' defect allegations are conclusory, the court finds that the consumer complaints included in plaintiffs' complaint give defendants sufficient notice of the nature of the defect. The consumer complaints also provide a factual basis for a plausible implied warranty claim. One complaint states, for example:

"I bought a demo A4 Audi ... I own a Quaker State oil change and three of our technicians have said they have never seen a car burn this much oil and claims there is a problem with the engine.... The other day driving the car it lots power going up the hill and the engine light flashed on then everything was ok. I am a 53 year old wom[an] on the road driving by myself afraid something will happen[ ] to the car ... I am fearful of driving the car especially when I have to drive out of the car alone." [115]

Another complaint states: "Since I bought my Audi, I have had to put oil in it many times ... I have also had an issue with the car seeming to lose power.... This is very startling when it happens." [116] Vehicles subject to engine failure cannot be said to be merchantable. *Cholakyan,* 796 F.Supp.2d at 1243–44; *Mexia v. Rinker Boat Co.,* 174 Cal.App.4th 1297, 1305–06, 95 Cal.Rptr.3d 285 (2009) (recognizing claim for breach of the implied warranty of merchantability under the Song–Beverly Act, where plaintiff alleged that a boat he purchased contained a latent defect causing its engine to corrode). Cf. *Hornberger,* 929 F.Supp. at 888 ("[A] material question of fact does exist as to whether a normal transmission of a newly leased vehicle would fail after being driven approximately 40,000 miles, rendering the car unfit for the purpose of driving and, therefore, unmerchantable"). Consequently, the court finds that plaintiffs have adequately stated a claim for breach of the implied warranty of merchantability under the Song–Beverly Act.

### 3. Magnuson–Moss Warranty Act

The Magnuson–Moss Warranty Act ("MMWA") permits a "consumer" to sue

---

113. *Id.,* ¶ 3.

114. *Id.,* ¶¶ 5–6.

115. *Id.,* ¶ 57.

116. *Id.*

for damage caused "by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this [act], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). The MMWA narrowly defines the meaning of "written warranty." The statute states that the term means

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or *promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time,* or (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6) (emphasis added).

As used in the MMWA, the term implied warranty "means an implied warranty arising under State law ... in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7); *Barabino v. Dan Gamel, Inc.,* No. 2:04–cv–2359–MCE–PA, 2006 WL 2083257, *4 (E.D.Cal. July 25, 2006) ("[W]hile the Plaintiff's MMWA claim constitutes a separate federal cause of action for breach of an implied warranty, courts must look to the relevant state law to determine the meaning and creation of any implied warranty"); see also *Stearns v. Select Comfort Retail*

*Corp.,* No. 08–2746 JF, 2009 WL 1635931, *9 (N.D.Cal. June 5, 2009) (the MMWA "does not expand the rights under [state law warranty] claims, and dismissal of the state law claims requires the same disposition with respect to an associated MMWA claim"); *Kanter v. Warner–Lambert Co.,* 99 Cal.App.4th 780, 798, 122 Cal.Rptr.2d 72 (2002) ("State law applies in breach of warranty actions as to both implied and written warranty claims under Magnuson–Moss, except as expressly stated by that act").

Defendants argue that plaintiffs' MMWA breach of warranty claim should be dismissed because it is "entirely derived from state law." [117] They argue that since the claim is "substantively identical" to plaintiffs' California and New York express warranty claims, it must be dismissed for the same reasons that those claims fail.[118] Because, as discussed, plaintiffs fail to allege reliance on any express warranty, as required under the circumstances of this case by both California and New York law, the court dismisses their MMWA claim to the extent that it is based on an alleged breach of express warranty. For the reasons stated in the court's discussion of plaintiffs' Song–Beverly Act claim, however, the court denies defendants' motion to dismiss the MMWA claim to the extent it is based on the alleged breach of an implied warranty.

### III. CONCLUSION

For the reasons stated, the court grants defendants' motions to dismiss Asghari's California claims; Prasobratana's CLRA, UCL, and Song–Beverly Act claims; Calver's claim for restitution under the UCL; plaintiffs' claims for breach of express warranty under both California and New York

---

117. VW Group Motion at 23.

118. *Id.*

law; and plaintiffs' MMWA claim to the extent it is based on alleged breaches of an express warranty. The motions are otherwise denied. Plaintiffs may file an amended complaint pleading addressing the deficiencies noted in this order within twenty (20) days of the date hereof. See *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995) ("'[A] district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts,'" quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir.1990)).